# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30193

United States Court of Appeals
Fifth Circuit

**FILED**

March 9, 2016

Lyle W. Cayce
Clerk

United States of America, ex rel, RONALD BIAS,

Plaintiff - Appellant

v.

TANGIPAHOA PARISH SCHOOL BOARD; MICHAEL STANT, in his official capacity; CARL J. FOSTER, in his official capacity,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, PRADO, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Ronald Bias, a high school JROTC instructor, brought suit against the Tangipahoa Parish School Board and two school employees. The district court dismissed Bias's False Claims Act retaliation, Section 1983, and state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6). We AFFIRM in part, and REVERSE and REMAND in part.

## FACTS AND PROCEDURAL BACKGROUND

In August 2008, Ronald Bias, a retired lieutenant colonel in the United States Marine Corps, began working for the Tangipahoa Parish School Board as the Junior Reserve Officers' Training Corps' ("JROTC") senior Marine Corps

No. 15-30193

instructor at Amite High School. One year later, the Marine Corps recalled Bias to active duty but allowed him to retain his position at Amite High. The Marine Corps paid and employed Bias. Bias alleged, however, that he was "in effect" a contractor or agent for the School Board because he was supervised by Amite High Principal Michael Stant.

In September 2009, the Amite High cross-country team traveled to Destin, Florida. Carl Foster, a teacher who also served as a JROTC master sergeant under Bias, was the faculty adviser for the team and coordinated the trip. The trip was not sponsored by or connected to the federal program, but Bias "overheard a rumor" that Foster requested reimbursement for trip expenses from JROTC funds. Bias, after confirming the reimbursement request with the JROTC Regional Director, reported the alleged attempted misappropriation to the school's principal, Stant. Bias contended that, despite Stant's assurances that he would prevent any attempt to cover costs associated with the trip with JROTC money, Foster submitted reimbursement paperwork with Stant's approval. The Marine Corps denied the request. Stant later facilitated the use of JROTC "activity account" funds to pay the trip expenses, which prompted the Marine Corps to investigate.

In April 2010, Bias reported a second alleged misappropriation to the JROTC Regional Director, which the Regional Director discussed with the School Board. Stant approved another reimbursement to Foster for "concession-stand supplies for an athletic event unrelated to JROTC." Later in the same month, the Marine Corps issued orders transferring Bias to a New Orleans school district more than an hour away from Amite High. Bias said the transfer would be detrimental to his career and cause considerable strain on his family, so he retired from the Marine Corps instead of taking the assignment.

No. 15-30193

Between the time of Bias's first report of misappropriated funds and the Marine Corps's transfer order, Bias's relationship with Stant and Foster deteriorated. Bias alleged that Stant began criticizing Bias's performance to the Marine Corps and others, "shout[ed]" at and "badger[ed]" Bias during meetings, implied to others that he caused Bias's transfer, and spread rumors about Bias to other school employees. Bias said Foster, assisted by Stant, became so insubordinate that he hindered Bias from carrying out his JROTC duties.

In September 2012, Bias filed this lawsuit against the School Board and also against Stant and Foster in their official capacities (collectively, the "defendants"). He asserted claims under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, including a *qui tam* action and retaliation claim. Bias later amended his complaint to add claims under 42 U.S.C. § 1983 and state law against the same defendants. The defendants moved to dismiss for failure to state a claim or, alternatively, for summary judgment. The district court, relying on Rule 12(b)(6), dismissed Bias's FCA retaliation claim because he had not sufficiently alleged that the defendants caused his employer, the Marine Corps, to transfer him. The district court also dismissed Bias's Section 1983 and state law claims as time-barred. Bias's motion for reconsideration was denied.

After the district court entered a scheduling order related to Bias's sole remaining claim, an FCA *qui tam* action, Bias moved for leave to file a second amended complaint. The magistrate judge denied his motion, and the district court affirmed. The parties settled the remaining FCA claim, and the district court entered final judgment on the previously-dismissed claims in the defendants' favor in January 2015. Bias timely appealed.

3

No. 15-30193

DISCUSSION

A district court's dismissal under Rule 12(b)(6) for failure to state a claim is reviewed *de novo*. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). A complaint survives a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility requires that the plaintiff "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court's inquiry should focus on the complaint as a whole, "regardless of how much of it is discussed in the motion to dismiss." *Wilson*, 667 F.3d at 595. "Dismissal is improper if the allegations support relief on any possible theory." *Id.* (quotation marks omitted) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)).

"We review the district court's denial of a motion to amend for abuse of discretion." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009).

## I.    *Section 1983 and State Law Claims*

The defendants contend that Bias's Section 1983 and state law claims are time-barred. Bias argues the defendants waived this affirmative defense by failing to assert it in their answer. He therefore contends that the district court erred in "permitting [the defendants] to resurrect" the defense in their motion to dismiss. We examine how the defense was raised.

On February 15, 2013, Bias moved for leave to file an amended complaint and submitted a proposed amendment that asserted new claims under Section 1983 and state law. On February 26, the defendants filed an answer styled "Answer to Complaint, As Amended" responding to the allegations in Bias's proposed, but not yet authorized, amended complaint. The statute of limitations defense was not pled. On March 6, the magistrate judge granted

4

No. 15-30193

Bias's motion for leave to amend; the amended complaint was docketed the same day. On July 3, 2013, the defendants filed a motion to dismiss[1] that, among other arguments, asserted for the first time that Bias's new claims in the amended complaint were time-barred.

Bias does not address the argument and implicitly concedes that his claims were time-barred. He does contend, though, that the statute of limitations defense has its own timing defect, namely, that the defense was not pled in the defendants' first response to his amended complaint. *See* FED. R. CIV. P. 8(c)(1). He argues that the February 26 answer, filed before leave to file the amended complaint was granted, fatally omitted pleading the defense.

The district court in its initial ruling of March 26, 2014, agreed that the affirmative defense was not timely pled. Yet, the court still held that the claims were time-barred. On reconsideration on May 15, the court acknowledged the need for elaboration of its reasoning. The court noted that a defense may be raised in a motion to dismiss if the motion is filed prior to the answer. *See Hilbun v. Goldberg*, 823 F.2d 881, 884 (5th Cir. 1987). The court concluded that the motion to dismiss was the first responsive pleading filed after leave to file the amended complaint was granted and the new complaint was actually filed. Thus, the district court held that the defendants preserved their defense and it dismissed the new claims as untimely.

It is certainly true that if a plaintiff amends his complaint, a defendant may file a new responsive pleading because the amended complaint typically causes the original pleading to be "of no legal effect." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). The district court concluded that the pleading entitled

---

[1] The defendants' motion to dismiss may have been untimely. *See* FED. R. CIV. P. 15(a)(3) (a response is required "within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading"). Bias, however, never advanced that argument before the district court and does not make that argument on appeal.

"Answer to Complaint, As Amended," was not a responsive pleading to the amended complaint because the answer was prematurely filed. If we were to disagree with the court, the defendants' waiting until a second responsive pleading, i.e., the motion to dismiss, to raise the time bar would be a technical failure to comply with Rule 8(c). We may excuse such errors provided a defendant raises the defense "at a pragmatically sufficient time" and there is no prejudice to the plaintiff's ability to respond. *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610–11 (5th Cir. 2007) (quotation marks omitted) (quoting *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986)). In *Arismendez*, we held there was no prejudice when a defendant raised a defense late in the case because it did not involve an issue of disputed fact. *Id.* at 611.

Here, Bias was not prejudiced. His lawsuit was still in its infancy when the defendants raised the time-bar defense. He had notice and an opportunity to respond to the motion to dismiss. Finally, he does not challenge the conclusion that his Section 1983 and state law claims are time-barred. The district court did not err in dismissing the new claims. *See id.*

## II.     *False Claims Act Retaliation Claim*

Bias filed an FCA retaliation claim against the School Board and Stant and Foster in their official capacities.[2] The district court dismissed the official capacity claims as redundant of Bias's claim against the School Board. *See Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th

---

[2] District courts disagree about whether 31 U.S.C. § 3730(h)(1), as amended in 2009, created individual liability for supervisors. *See United States ex rel. Wuestenhoefer v. Jefferson*, No. 4:10-CV-00012-DMB-DAS, 2014 WL 7409760, at *7 (N.D. Miss. Dec. 31, 2014) (collecting cases). This court has not previously addressed the issue, and we do not reach it now as Bias filed his FCA retaliation claim against Stant and Foster only in their official capacities.

No. 15-30193

Cir. 2000) ("[O]fficial-capacity claims and . . . claims against the governmental entity essentially merge."). It also dismissed the claim against the School Board, finding that the Marine Corps was "responsible for the terms and conditions of [Bias's] employment." Therefore, only the Marine Corps or its agents or employees, not the School Board, could have retaliated against Bias. In response to Bias's motion to reconsider, the district court further clarified that the problem with his complaint relates to causation:

> Even if Mr. Stant and Mr. Foster had asked that Mr. Bias be transferred, that could not have been the cause . . . of the [Marine Corps' discretionary] transfer. This is true whether or not the Marine Corps relied on their alleged request: if it did, then the Marine Corps' potentially inappropriate reliance severs the causal chain; if it did not, then there was no causal chain to begin with.

On appeal, Bias focuses only on the School Board's liability as a result of the actions of Stant and Foster. Thus, we confine our analysis to the sufficiency of Bias's claim against the School Board. We begin by examining the statutory language and the elements of a proper claim.

Under the FCA "whistleblower" statute:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that [individual] . . . whole . . . if that [individual] . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the [individual] . . . in furtherance of . . . efforts to stop [one] or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). To survive a motion to dismiss, a plaintiff alleging injury under Section 3730(h)(1) must show (1) he engaged in protected activity, (2) his employer, or the entity with which he has contracted or serves as an agent, knew about the protected activity, and (3) he was retaliated against because of his protected activity. *See id.*; *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994).

No. 15-30193

Here, the parties appear to agree that Bias alleged he engaged in protected activity by reporting suspected misappropriation of government funds. As to knowledge of the protected activity, Bias contended he discussed the suspected misappropriations with Stant, Foster, and the JROTC Regional Director, and that the Regional Director alerted the School Board. Whether the other elements of a retaliation claim are sufficiently pled is where we now turn.

Bias's primary theory of liability against the School Board is that Stant and Foster were the Board's agents, that they opposed his protected activities, and they used pretext to convince the Marine Corps to remove Bias from the school.[3] Bias also argues, however, that Stant and Foster retaliated against him directly for engaging in protected activity, and that the School Board is liable for their conduct. Because we conclude that Bias pled enough facts to state a claim under this latter theory, we decline to address the former.

### A.   Required Statutory Relationship

Initially, we examine whether Bias has alleged the kind of relationship with the School Board required by statute. In 2009, Congress amended the FCA retaliation statute by omitting the word "employer" as the only potentially culpable party, and adding "contractor" or "agent" to "employee" as identifiers of a possible aggrieved party.[4] Fraud Enforcement and Recovery Act of 2009,

---

[3] This argument is somewhat similar to the cat's-paw theory of causation utilized for retaliation claims under Title VII of the Civil Rights Act. *See Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015), *petition for cert. filed* (Jan. 8, 2016) (No. 15-868) ("Under this theory, . . . a plaintiff must show that the person with retaliatory animus used the decisionmaker to bring about the intended retaliatory action."). We have "expressed uncertainty about the continued viability of cat's paw analysis" in certain employment claims now subject to a heightened but-for standard of causation, and we have never applied such a theory in an FCA retaliation context. *See id.*

[4] The previous version of the statute read: "Any employee who is discharged, [etc.] . . . , or in any other manner discriminated against in the terms and conditions of employment

Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1624.  There is little available case law discussing the amendment.  Most district courts, including some in this circuit, reason that the amendment expanded the range of plaintiffs in FCA retaliation actions while still requiring that a defendant have "some employer-type relationship with the plaintiff."  *See, e.g., United States ex rel. Wuestenhoefer v. Jefferson*, No. 4:10-CV-00012-DMB-DAS, 2014 WL 7409760, at \*7 (N.D. Miss. Dec. 31, 2014).[5]  We factor into our analysis that Section 3730(h)(1) is designed to protect individuals who expose unlawful use or handling of the property of the federal government.  31 U.S.C. § 3730(h).  Because the FCA is "remedial," its provisions are to be construed "broadly to effectuate its purpose."  *See United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 468 (5th Cir. 2015), *petition for cert. filed* (Oct. 21, 2015) (No. 15-513).

District courts, however, have cautioned that Congress did not intend "to grant a federal right of action against anyone and everyone" in amending the statute, so requiring some employment relationship acts as a continuing limiting principle.  *See generally, e.g., Howell v. Town of Ball*, No. 12-951, 2012 WL 6680364, at \*2 (W.D. La. Dec. 21, 2012).  We agree, and conclude that the 2009 amendment requires that courts must expand the class of defendants beyond just employers but not interpret that expansion as a license to sue anyone.  To discern the outer boundary of liability, we look "to the plain language of the statute, reading it as a whole and mindful of the linguistic choices made by Congress."  *See In re Universal Seismic Assocs., Inc.*, 288 F.3d

---

by his or her employer . . . shall be entitled to all relief necessary to make the employee whole."  31 U.S.C. § 3730(h) (2006), *amended by* 31 U.S.C. § 3730(h)(1).

[5] Some courts have reached this conclusion because of a Senate Report explaining that the amendment was necessary to correct courts' narrow interpretation of the term "employee," which left individuals "who are not technically employees . . . but nonetheless have a contractual or agent relationship with an employer" unprotected.  S. REP. No. 110-507, at 2, 26–27 (2008).  We rely on the plain language of the statute, though, particularly the omission of the word "employer" to identify the defendant, and not the Senate Report.

205, 207 (5th Cir. 2002). One of the district courts recognized there still must be an "employer-*type* relationship," *see Wuestenhoefer*, 2014 WL 7409760, at \*7 (emphasis added), an articulation we can accept if the meaning is confined to the three types of relationships listed in the statute. Defendants, then, must be those by whom plaintiffs are employed, with whom they contract, or for whom they are agents. In addition, the retaliatory action must be related to "terms and conditions of *employment*," or the contract or agency relationship. *See* 31 U.S.C. § 3730(h)(1) (emphasis added).

Traditionally, JROTC instructors are employed by the school district and are "responsible to school authorities," though the Regional Director and military maintain oversight over the program. Marine Corps Order 1533.6E, at 3–3 (Marine Corps' JROTC regulations); *see also* 10 U.S.C. § 2031(d)(2). Bias alleged that he left that traditional relationship before he was retirement eligible. The military then did its best to rectify that error by recalling him to active duty. Bias contended, though, that his recall placed him in a bifurcated status: he was an active-duty Marine paid by the Marine Corps, which ordered his transfer, but he continued to answer to Stant, a principal employed by the School Board. Though Section 3730(h)(1) expanded the range of plaintiffs who can bring FCA retaliation claims, the statute did not define "employee," "contractor," or "agent." We thus look outside its text to determine whether Bias's relationship with Stant and the School Board could fall within those anticipated by the statute.

"Contractor" requires the existence of some form of contract between parties. Although Bias alleged in his complaint that he was effectively a contractor for the School Board, he did not plead that he entered into a contract with the defendants. Also, counsel conceded in oral argument that no such contract exists.

As for "employee," courts should look to the "conventional master-

servant relationship as understood by common-law agency doctrine" where a statute leaves the word undefined. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–40 (1989). To determine whether an employment relationship exists in other contexts, this circuit applies a "hybrid economic realities/common law control test." *See Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (applying Title VII of the Civil Rights Act). "The most important component of this test is [t]he right to control [the] employee's conduct." *Id.* (alterations in original) (quotation marks omitted) (quoting *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117, 119 (5th Cir. 1993)). This includes examining whether the alleged employer has the power to "hire, fire, supervise, and set the work schedule of the employee." *Id.* The economic realities portion focuses on who pays, withholds taxes from, provides benefits to, and sets other terms and conditions of employment for, the employee. *Id.*

Similarly, the common law definition of "agency" anticipates "a consensual relationship in which one person . . . acts as a representative . . . of another . . . with power to affect the legal rights and duties of the other person." RESTATEMENT (THIRD) OF AGENCY § 1.01, cmt. c. The person represented, as in a master-servant situation, "has a right to control the . . . agent." *Id.*

Bias admitted in his complaint[6] that he was on active military duty and was paid by the Marine Corps. He claimed, though, that by being assigned to the high school's JROTC program, he "in effect, was a contractor or agent to the Tangipahoa Parish School Board." Bias also alleged that Stant, a principal employed by the School Board, supervised him and evaluated his performance. Additionally, Bias said the unusual situation resulting from his premature

---

[6] Bias's first amended complaint did not add any facts fleshing out the relationship between him and the School Board, so our review is confined to the sufficiency of the factual content in his original pleading.

11

retirement from the Marine Corps left him "assigned to the same school in virtually the same position as" when he was actually employed by the School Board. Other allegations were that he performed teacher-like functions, such as supervising lunchtime detention, and participated in meetings with school officials, including someone from the Human Resources department, to discuss the conflict between Stant, Foster, and Bias.

In summary, exactly what the relationship was between Bias and the School Board is unclear. It is plausible, though, that he was, as claimed, an agent (his counsel acknowledged Bias was not a contractor). Bias did not expressly contend that he was an employee. There is enough pled in the complaint to make it plausible, as required by *Twombly*, that Bias had the kind of relationship required by statute with the School Board. 550 U.S. at 570.

### B.    *Retaliatory Acts*

As for the alleged retaliatory acts, this court has not examined in any depth what constitutes retaliation under the FCA. The statute itself provides a list of non-exhaustive examples. 31 U.S.C. § 3730(h)(1) (retaliation includes "discharge[], demot[ion], suspen[sion], threat[s, and] harass[ment]"). Other circuits, have expanded on that list, holding that "behavior . . . constitute[s] retaliation [if] . . . it would be sufficient to constitute an adverse employment action under Title VII." *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 847–48 (9th Cir. 2002).

Analyzing other whistleblower statutes with language comparable to Section 3730(h)(1), this court has said that, as under Title VII, a retaliatory act must be "materially adverse, which . . . means it well might have dissuaded a reasonable worker from" engaging in protected activity. *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 259–60 (5th Cir. 2014) (determining the meaning of retaliation under the Sarbanes-Oxley Act's ("SOX") retaliation

provision) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006)). Based on the similarity of the whistleblower protections afforded under the FCA and SOX, we find the SOX definition of retaliation as articulated in *Halliburton* also applies to Section 3730(h)(1). *Compare* 31 U.S.C. § 3730(h)(1) (FCA), *with* 18 U.S.C. § 1514A(a) (SOX).[7]

Here, Bias alleged that the Marine Corps ordered the ultimate retaliatory act against him, which was his transfer. That was an effective demotion that would have put considerable strain on his family. Instead, he retired early. Bias also pled that Stant (the individual charged with supervising and evaluating his performance) caused the transfer order to be issued by reporting to the School Board, Marine Corps, and other employees that Bias had been "derelict in his duties" and was unlikely to receive an appointment for the next year. Bias, moreover, contended that Stant, assisted by Foster, "harass[ed]" him for a number of months after Bias reported the misappropriation of funds. *See* 31 U.S.C. § 3730(h)(1) (prohibiting the threat or harassment of an employee because he has engaged in protected activity). Specific examples of harassment in the complaint include Stant's "shout[ing]" at and "badgering" Bias, spreading rumors about Bias, and facilitating Foster's insubordination, which made it difficult for Bias to do his job.

The defendants counter that the School Board is not liable for the "retaliatory acts, even if proven, of its mid and low level employees without having any knowledge" of their conduct. We borrow from common law agency principles "[w]hen grappling with the standard for imposing vicarious liability in civil liability provisions." *See United States ex rel. Vavra v. Kellogg Brown*

---

[7] SOX's whistleblower statute provides that "[n]o company [subject to SOX's mandates] . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee." 18 U.S.C. § 1514A(a).

*& Root, Inc.*, 727 F.3d 343, 349 (5th Cir. 2013).  Common law dictates that a "master is subject to liability for the torts of his servants committed while acting in the scope of their employment," or acts committed "outside the scope of employment, if the servant purported to act or to speak on behalf of the principal and there was reliance upon *apparent authority*."[8]  *Id.* (footnote and quotation marks omitted) (quoting RESTATEMENT (SECOND) OF AGENCY § 219 (1958)); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 802–03 (1998) (using agency law to determine vicarious liability for a supervisor's unlawful harassment under Title VII).

In the present case, Bias alleged that Stant and Foster convinced the Marine Corps to transfer him after he reported supposed misappropriation of government funds.  He also alleged, however, that Stant and Foster harassed him during the school day and undermined his ability to adequately perform his job.  *See Arguello v. Conoco, Inc.*, 207 F.3d 803, 810 (5th Cir. 2000) (factors used to consider whether an act is within the scope of employment include the time and purpose of the act, and its similarity to acts which the servant is authorized to perform).  Although Foster was a teacher subordinate to Bias in JROTC, Stant was Amite High's principal, or the top official who ran day-to-

---

[8] Bias cites *United States v. Ridglea State Bank*, 357 F.2d 495, 498 (5th Cir. 1966), in arguing that, under the FCA, a corporation is liable for its employees' acts if the employees were "acting within the scope of their authority and *for the purpose of benefitting the corporation*." (emphasis added).  That case, however, analyzed a corporation's FCA liability for an employee's alleged misappropriation of government funds, not an FCA retaliation claim.  *Id.* at 496–97.  At that time, the FCA authorized double damages and a forfeiture of $2,000 for each knowing violation of the law.  *Id.* at 497–98.  Thus, we sought guidance from more-rigorous criminal vicarious liability principles.  *Id.* at 498–500.  We have not applied the *Ridglea* standard in examining vicarious liability in any other civil statute, including Section 3730(h)(1), and we have since questioned the applicability of *Ridglea* generally.  *See United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 350–51 (5th Cir. 2013) (citing *American Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 573–74 (1982) (noting, in applying agency law in a Sherman Antitrust Act vicarious liability claim, that requiring an employee act to benefit the employer before imputing liability would hinder the law's purpose)).

No. 15-30193

day operations at the school on behalf of the School Board and allegedly supervised Bias.

For purposes of deciding whether dismissal under Rule 12(b)(6) is appropriate, Bias's allegations about Stant "well might have dissuaded" Bias from reporting misappropriation of government funds. *See Burlington*, 548 U.S. at 67–68. Additionally, Bias pled enough facts to make it plausible that Stant was acting within the scope of his employment, or at the very least, with the apparent authority of the School Board. *See Vavra*, 727 F.3d at 349. Bias has sufficiently stated a claim against the School Board, based on Stant's alleged actions against him. *See Twombly*, 550 U.S. at 570. We reverse the district court's dismissal of his FCA retaliation claim as to that defendant.

### III.    *Motion to Amend Complaint*

Finally, Bias argues that the district court abused its discretion in denying him a second opportunity to amend his complaint.

As an initial matter, the defendants argue that Bias impermissibly attempted to expand the scope of his appeal by seeking review of "various *other* district court rulings *subsequent* to its March 26, 2014 granting of [the defendants'] motion to dismiss." Federal Rule of Appellate Procedure 3(c) requires an appellant to "designate the judgment, order, or part thereof being appealed" in the notice of appeal. This requirement is jurisdictional, but we "construe a notice of appeal liberally to avoid technical barriers to review." *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 884 (5th Cir. 1998). Bias's Notice of Appeal references only the district court's January 2015 final judgment. Reviewing a final judgment, though, "clearly encompasses the prior orders leading up to it." *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 348–49 (5th Cir. 1989). Whether the district court erred in denying Bias's motion to amend is therefore properly before this court.

15

No. 15-30193

On March 26, 2014, the district court dismissed Bias's FCA retaliation, Section 1983, and state law claims.  The court clarified parts of its order on May 15 in denying Bias's motion for reconsideration.  On May 22, the court entered a scheduling order related to the remaining FCA claim, setting the deadline for amending pleadings with leave of court for June 23.  On August 13, Bias filed a motion for leave to file his second amended complaint.  The magistrate judge denied the motion, and the district court affirmed.

While Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be "freely" given, Rule 16(b)(4) limits modifications to a scheduling order to situations where good cause is shown.  *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535–36 (5th Cir. 2003).  Four factors are considered in determining whether a motion under Rule 16(b)(4) should be granted: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice."  *Id.* at 536.

We have held that Bias's complaint was sufficient to state an FCA retaliation claim against the School Board.  We therefore note that the need for an amendment as to that claim and defendant was minimal.  As for his other claims, the magistrate judge properly found that the first *S&W Enterprises* factor weighed in favor of denying Bias's motion.  Bias argues that deciding whether to amend was "not an easy decision" because he had to "fully digest" both the court's dismissal order and denial of his motion for reconsideration.  The district court's March 2013 order dismissing Bias's claims in part did contain confusing language.  Bias still had several weeks after the court clarified its reasoning, though, to request leave to amend.  Instead, he waited more than two months after a scheduling order was entered, and one month after the deadline to amend pleadings passed, to file his motion.

The magistrate judge also correctly concluded that the third factor weighed against Bias. If his amendment had been authorized, the parties would have been forced to "re-urge the same arguments" presented in previous dispositive motions, which could have delayed set deadlines related to the sole remaining claim in the case.

Finally, as to Bias's Section 1983 and state law claims, the second factor counseled against granting Bias's motion. Bias concedes that any amendment he could have offered would have been futile as he fails to challenge the district court's conclusion that the claims are time-barred. *See* LA. CIV. CODE art. 3492; *see also Moore v. McDonald*, 30 F.3d 616, 620–21 (5th Cir. 1994).

In sum, on remand, Bias is free to file another motion requesting permission to amend. The district court did not, however, abuse its discretion in denying Bias's second motion for leave to amend in August 2014.

We REVERSE the dismissal of Bias's FCA retaliation claim against the School Board, and REMAND. We otherwise AFFIRM.