# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30552

United States Court of Appeals
Fifth Circuit

**FILED**

July 1, 2016

Lyle W. Cayce
Clerk

THOMAS R. HOWELL,

> Plaintiff - Appellant Cross-Appellee

v.

TOWN OF BALL,

> Defendant - Appellee Cross-Appellant

DANIEL CALDWELL, in his official capacity as Police Chief for the Town of Ball; ROGER TONEY, in his official capacity as former Mayor of the Town of Ball; CURTIS ROBERTSON, in his official capacity as Alderman of the Town of Ball, also known as Buster Robertson; WILLIE BISHOP, in her official capacity as Alderman of the Town of Ball; JERRY GIDDINGS, in his official capacity as Alderman of the Town of Ball; CHRIS COVINGTON, in her official capacity as Alderman of the Town of Ball; GINNY POTEET, in her official capacity as Alderman of the Town of Ball; ROY E. HEBRON,

> Defendants - Appellees

Appeals from the United States District Court
for the Western District of Louisiana

Before REAVLEY, JOLLY, and ELROD, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Thomas Howell, a former police officer for the town of Ball, Louisiana, brought this action against the town of Ball and several individual defendants. Howell alleged that the defendants violated his First Amendment rights when

he was fired for cooperating with an FBI investigation of public corruption. Howell also asserted a claim under the False Claims Act, 31 U.S.C. § 3730(h), alleging that he was fired in violation of the Act's whistleblower protections.

The district court, through a series of rulings on 12(b)(6) motions and motions for summary judgment, dismissed Howell's First Amendment retaliation claims against all defendants, and dismissed Howell's FCA claims against all individual defendants; however, the court denied summary judgment with respect to the lone remaining FCA claim against the town of Ball. The district court, under Fed. R. Civ. P. 54(b), certified its judgment as "final" with respect to all dismissed claims. Accordingly, Howell appeals the grant of summary judgment dismissing his First Amendment retaliation claims against all defendants and dismissing his FCA claims against the individual defendants. The town of Ball cross-appeals the denial of summary judgment with respect to the FCA claim against it.

We find that the district court erred in holding that Howell's involvement in the FBI investigation was not entitled to First Amendment protection. Although we hold that Howell asserts a violation of his right of free speech, we further hold that the right at issue was not "clearly established" at the time of his discharge. The district court's dismissal of the individual defendants on the basis of qualified immunity is therefore affirmed. We reverse and vacate the grant of summary judgment for the town of Ball, however, because Howell has demonstrated a viable claim of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Moreover, we dismiss the town of Ball's cross-appeal for lack of appellate jurisdiction. Finally, we affirm the district court's dismissal of the FCA claims against the individual defendants.

No. 15-30552

I.

Thomas Howell is a former police officer for the town of Ball, Louisiana. In 2008, while serving as a police sergeant, Howell became aware that Ball's mayor, Roy Hebron, had fraudulently obtained disaster recovery funds from the Federal Emergency Management Agency ("FEMA"). Several other prominent town officials were also implicated in the scheme, including then-Police Chief Jay Barber. Howell, through a fellow police officer, relayed to FBI Agent Robert Deaton that he wished to share information regarding the FEMA fraud. Soon thereafter, Deaton contacted Howell by telephone. Howell met with Agent Deaton and gave information regarding the town officials' FEMA relief applications. Howell also agreed to become a confidential informant for the FBI. He participated in the investigation by wearing a wire and secretly recording conversations with Hebron and other municipal employees, including at least one fellow police officer.

The investigation was successful. On September 25, 2009, Mayor Hebron and four other Ball employees, including Police Chief Jay Barber, were indicted for crimes related to the FEMA fraud. Defendant Daniel Caldwell became the new police chief. Caldwell later learned of Howell's involvement in the FBI investigation. According to Howell, Caldwell began to harass him in retaliation for helping with the FBI investigation. Caldwell frequently would ask Howell during work-related conversations whether he was "wearing a wire," and on one occasion insisted that Howell unbutton his shirt to confirm that he was not. Caldwell also told Howell that he did not trust him because of his involvement in the FBI investigation.

In May 2011, Howell heard rumors that Caldwell started a departmental investigation into allegations that Howell had stolen a USB flash drive from a coworker's foot locker. Howell visited Caldwell at his home to ask him whether such an investigation was, in fact, being conducted. Caldwell confirmed that

3

there was such an investigation.[1]  Howell then engaged in what he calls a "heated discussion" with Caldwell regarding the true motivations behind the investigation.  The conversation did not end well for Howell.  He lost his job.

After this event, the Board of Aldermen conducted a hearing on Howell's employment status. During the session, Caldwell recommended that Howell be discharged for insubordinate conduct, and recounted his confrontation with Howell.[2]  The Board then allowed Howell an opportunity to speak.  Howell told the Board that he considered Caldwell's action to be "revenge" for helping with the FBI investigation.   After hearing from Howell, the Board voted unanimously to end Howell's employment with the Ball Police Department.

On April 20, 2012, Howell filed suit against the town of Ball, Caldwell, former Mayor Hebron, Mayor Toney, and the individual members of the Board of Aldermen: Curtis Robertson, Willie Bishop, Jerry Giddings, Chris Covington, and Genny Poteet (collectively, the "Board defendants").  Howell alleged that the defendants violated his First Amendment rights when they fired him for providing information to the FBI, and for otherwise participating in the FBI investigation as a confidential informant.   Howell also asserted a claim under the False Claims Act, alleging that he was fired for participating in activity protected under the statute.

In September and December 2012, the district court granted the individual defendants' motions to dismiss the FCA claims, reasoning that the FCA created a cause of action against only a plaintiff's employer.  On March 20, 2014, the district court granted summary judgment on the First Amendment claims against Police Chief Caldwell.  On March 3, 2015, the

---

[1] Caldwell now admits that there was never a formal investigation into the theft of the flash drive.

[2] Police Chief Caldwell had authority only to recommend Howell's employment termination to the Board of Aldermen; the Board alone had the final authority to terminate Howell's employment with the town of Ball.

No. 15-30552

district court granted summary judgment against Howell's remaining First Amendment retaliation claims. The district court, however, denied summary judgment with respect to the FCA claim against the town of Ball itself. At the request of the parties, the district court certified its judgment under Fed. R. Civ. P. 54(b), as "final" with respect to all dismissed claims, thus allowing for the instant appeal.

II.

As we have earlier said, the district court dismissed Howell's claims through a combination of rulings on motions to dismiss for failure to state a claim and motions for summary judgment. We review de novo a district court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). We take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, and ask whether the pleadings contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

With respect to the district court's grant of summary judgment, "[w]e review the grant of a motion for summary judgment de novo, applying the same standard as the district court." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir. 1998)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party." *Moss*, 610 F.3d

5

No. 15-30552

at 922 (citing *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006)).

## III.

We begin by briefly considering a jurisdictional issue regarding the town of Ball's cross-appeal. Ball's cross-appeal asserts that the district court erred in denying summary judgment on the lone remaining FCA claim.

We lack jurisdiction to review the district court's denial of summary judgment regarding the FCA claim against the town of Ball. As stated in the fact section, the procedural posture of this case is somewhat unusual in that the district court certified its judgment as final regarding the dismissed claims, even though an FCA claim remains pending against the town of Ball. *See* Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."). A district court may certify its judgment as final, however, only with respect to claims that have been conclusively resolved. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (stating that, for a judgment to be properly certified under Rule 54(b), it must be "final in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action" (internal quotations omitted)). In other words, we have jurisdiction over only those claims that the district court actually conclusively resolved through dismissal. *See Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010).

The district court's denial of summary judgment for the FCA claim against Ball was not a final disposition of that claim. As far as we can tell, that claim is still pending before the district court. Thus, we dismiss Ball's cross-appeal for lack of appellate jurisdiction.

No. 15-30552

IV.

We turn now to consider the district court's grant of summary judgment against Howell's § 1983 claims for First Amendment retaliation. We begin our analysis with a discussion of the relevant Supreme Court and Fifth Circuit precedents, before applying those precedents to the instant appeal.

A.

This court has long employed a four-prong test to determine whether the speech of public employees is entitled to constitutional protection. A plaintiff must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct. *See, e.g.*, *Lukan v. N. Forest Indep. Sch. Dist.*, 183 F.3d 342, 346 (5th Cir. 1999).

At issue in this appeal is whether the second prong of the test is satisfied. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006). Under *Garcetti*, instead of asking only if the speech at issue was on a matter of public concern, a court must first decide whether the plaintiff was speaking as a citizen disassociated with his public duties, or whether the plaintiff was speaking in furtherance of the duties of his or her public employment. Only speech made in one's capacity as a citizen is entitled to First Amendment protection. *See id.* at 421 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). In other words, the First Amendment does not protect speech made in furtherance of a public employee's official duties, regardless of whether that speech addresses a matter of public concern.

The Supreme Court recently returned to the subject in *Lane v. Franks*, 134 S. Ct. 2369 (2014). In *Lane*, the petitioner, an employee of Alabama's state-

No. 15-30552

run community college system, brought a § 1983 claim alleging retaliation for exercising his First Amendment right to testify before the grand jury regarding public corruption in the college system.  Ruling that the plaintiff's grand jury testimony was entitled to First Amendment protection, the Court emphasized that, under *Garcetti*, "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id*. at 2379.

Furthermore, since Howell's discharge, the Fifth Circuit has applied *Garcetti*'s distinction in a case where a police officer alleged that he was fired in retaliation for reporting municipal corruption to outside law enforcement agencies.  *See Gibson v. Kilpatrick*, 773 F.3d 661 (5th Cir. 2014). In *Gibson*, this court considered whether the plaintiff, a local police chief, acted pursuant to his official job duties when he reported to outside law enforcement agencies that the mayor had misused a city gasoline card.  The *Gibson* court recognized that, in some circumstances, reporting municipal crimes to an outside law enforcement agency may be outside a police officer's "ordinary" duties, thus entitling it to First Amendment protection under *Lane*.  *See id*. at 670, 672. The *Gibson* court, however, ultimately held that the defendants were entitled to qualified immunity because the plaintiff failed to offer evidence clarifying whether he made the reports as a private citizen instead of in furtherance of his ordinary duties as police chief.  *See id*. at 672.

## B.

Howell contends here that the defendants violated his First Amendment rights by firing him for cooperating with the FBI investigation into the FEMA fraud.  Howell emphasizes that, under the Supreme Court's recent decision in *Lane*, the relevant question is whether the speech at issue is ordinarily within the scope of an employee's duties. *See* 134 S. Ct. at 2378.  According to Howell, his ordinary professional obligations as a police officer for the town of Ball did

not include secretly providing information to an outside law enforcement agency regarding crimes committed by coworkers and other municipal employees, or secretly participating in an external agency's investigation into municipal corruption.

Howell has offered evidence that his involvement in the FBI investigation was outside the ordinary scope his professional duties. Under *Garcetti* and *Lane*, the "proper inquiry is a practical one," and focuses solely on whether the speech at issue is *ordinarily* within the scope of the employee's professional duties. *See Garcetti*, 547 U.S. at 424–25; *Lane*, 134 S. Ct. at 2378. Howell's statements to the FBI were made outside the normal chain of command and without the knowledge or permission of anyone else in the police department. *See Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008) (holding that statements to "external, unrelated entities" were protected where it was "not within [employee's] job function to communicate with outside police authorities" and such communications had not happened in the past). Indeed, the confidential nature of Howell's speech alone suggests that it was not part of his "ordinary" professional duties; the FBI did not ask for any assistance from the Ball Police Department, and Howell was forbidden from telling anyone at the department that he was aiding the FBI by recording town officials' conversations, since doing so would have compromised the investigation.

In an attempt to downplay the unusual circumstances surrounding Howell's cooperation with the FBI, the defendants point only to the judicially established definition of a Louisiana police officer's duties. *See Smith on Behalf of Smith v. City of Kenner*, 428 So. 2d 1171, 1174 (La. App. 5 Cir. 1983) (stating that a police officer is responsible for "maintaining peace and order, preventing and detecting crime, and enforcing the law" (internal quotation marks omitted)). The defendants contend that, embedded within the general

No. 15-30552

duty to "detect and prevent crime," is the specific obligation to cooperate with outside law enforcement agencies regarding investigations into public corruption. That may or may not be plausible as a generality. But such general, implicit assumptions are not dispositive regarding the scope of a public employee's "ordinary" job duties, because such broad assumptions fail to describe with sufficient detail the day-to-day duties of a public employee's job. *See Garcetti*, 547 U.S. at 424–25; *see also Gibson*, 773 F.3d at 671. Accordingly, we decline to infer solely from a Louisiana law enforcement officer's non-specific duty to "detect and prevent crime" that Howell, as a local police officer, had an ordinary duty to participate secretly in an FBI investigation of coworkers' and superiors' illegal conduct.

In sum, Howell asserts that it was never part of his normal job duties, secretly and without departmental authorization, to aid in an FBI investigation of coworkers and superiors, much less to record surreptitiously coworkers' conversations at the FBI's request. The defendants offer no evidence to the contrary, other than the all-encompassing, judicially established general description of a police officer's professional responsibilities in the state of Louisiana, which, as we have stated, cannot be considered dispositive. Accordingly, the district court erred in finding that Howell's involvement in the FBI investigation was in furtherance of his ordinary job duties, and thus was not entitled to First Amendment protection.

C.

But we must move further down the road to consider whether the district court's *Garcetti* error ultimately affects Howell's claims. We first discuss Howell's claims against the individual defendants, before turning to Howell's claim against the town of Ball.

10

No. 15-30552

1.

We first turn our attention to the district court's treatment of the individual Board defendants. After rejecting Howell's First Amendment claims on the merits, the district court held, in the alternative, that the Board defendants were entitled to qualified immunity for any claims brought against them in their individual capacities. Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2085 (2011). "Under this doctrine, courts may not award damages against a government official in his personal capacity unless [1] 'the official violated a statutory or constitutional right,' and [2] 'the right was 'clearly established' at the time of the challenged conduct.'" *Lane*, 134 S. Ct. at 2381 (quoting *al-Kidd*, 131 S. Ct. at 2080)). Regarding the second prong of qualified immunity analysis, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). Once a defendant properly invokes the defense of qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to the doctrine's protection. *See Michalik v. Hermann,* 422 F.3d 252, 258 (5th Cir. 2005).

Acknowledging that it was a close question regarding whether the First Amendment protected Howell's speech, and thus whether a constitutional violation occurred, the district court also considered the second prong of qualified immunity analysis for the individual Board defendants. The court ultimately concluded that the Board defendants were entitled to qualified immunity because, at the time Howell was fired, it was not clearly established whether his involvement in the FBI investigation was protected under the First Amendment. We agree.

No. 15-30552

At the time that Howell was fired, *Garcetti*'s distinction between speech made pursuant to official duties and speech made as a private citizen was relatively new, and this court had not considered it in the context of an action involving a police officer's statements to an outside law enforcement agency, or in the context of a law enforcement officer's assistance with an outside agency's investigation. *Garcetti*, by its own admission, did not "articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *See* 547 U.S. at 424. Furthermore, the Supreme Court did not emphasize that only speech made in furtherance of an employee's "ordinary" job duties is not protected until nearly three years after Howell was discharged. *See Lane*, 134 S. Ct. at 2369; *see also Gibson*, 773 F.3d at 668 (acknowledging that, although *Lane*'s insertion of the qualifier "ordinary" did not meaningfully alter *Garcetti*'s original test, it does provide additional guidance regarding what speech falls within an employee's official duties); *Mpoy v. Rhee*, 758 F.3d 285, 295 (D.C. Cir. 2014) ("In particular, the use of the adjective 'ordinary'—which the [C]ourt repeated nine times— could signal a narrowing of the realm of employee speech left unprotected by *Garcetti*.").

The lack of the application of *Garcetti* to similar facts at the time of Howell's discharge, coupled with the Supreme Court's only recent clarification of *Garcetti*'s citizen/employee distinction in *Lane*, compels us to hold that the Board defendants did not violate a "clearly established" constitutional right when voting to fire Howell.[3]  We thus affirm the district court's grant of qualified immunity to the Board defendants.

---

[3]  We also note that, in his briefing, Howell routinely defines the right at issue as simply "First Amendment" rights, despite this court's instruction that the clearly established "right" at issue must be defined within the contours of the specific controversy. *See Morgan v. Swanson*, 755 F.3d 757, 760 (5th Cir. 2014) ("A plaintiff does not overcome the qualified

No. 15-30552

2.

We also affirm the dismissal of the First Amendment retaliation claim against Police Chief Caldwell. The district court dismissed the First Amendment retaliation claim against Caldwell after finding that the Board, and not Caldwell, was the "final decision maker" with respect to Howell's discharge. The district court asserted that, although the "cat's paw" theory of liability allows a final decision maker to be held liable if his or her decision is influenced by a subordinate's retaliatory animus, a non-final decision maker may not be held liable for First Amendment retaliation claims brought under § 1983.

Our precedents, at minimum, cast uncertainty on the proposition that an individual must be the actual "final decision maker" to be held liable in an individual capacity for a First Amendment retaliation. *See DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009); *see also Culbertson v. Lykos*, 790 F.3d 608, 625–26 (5th Cir. 2015). We, however, may pretermit whether the district court erred in granting summary judgment on these grounds, since Caldwell is also entitled to qualified immunity. Similar to the Board defendants, Caldwell argued before the district court that he was entitled to the doctrine's protections because, at the time Howell was fired, it was not "clearly established" that his involvement in the FBI investigation was outside his official duties, and thus protected under the First Amendment.[4] Having decided this issue in favor of the Board defendants already, we now conclude

immunity defense by alleging the violation of a right that is only defined at a high level of generality." (internal quotation marks omitted)).

[4] Caldwell raised the defense of qualified immunity in his second motion for summary judgment. *See* Dist. Ct. Doc. 106. The district court did not consider Caldwell's qualified immunity defense. This omission, however, does not prevent this court from affirming the district court's judgment on qualified immunity grounds. *See Casiano v. Am. Telegraph and Telephone Corp.*, 213 F.3d 278, 283 (5th Cir. 2000) ("We can and frequently do affirm the judgment of a district court for reasons other than those expressed by [the district] court.").

13

No. 15-30552

that Caldwell is entitled to qualified immunity on the same basis. Accordingly, we affirm the district court's dismissal of the First Amendment retaliation claim against Police Chief Caldwell.

3.

We move up the political ladder of defendants and next consider the district court's dismissal of the First Amendment claims against Mayor Toney and former Mayor Hebron. At the time Howell was fired, Hebron was on no rung of the political ladder because he had already resigned as mayor of Ball. Thus, he is not a "state actor" for the purposes of liability under § 1983. Howell acknowledges this point, but contends that Hebron may nevertheless be held liable under § 1983 because he and Caldwell participated in a conspiracy to deprive Howell of his First Amendment rights. *See Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). In support of his "conspiracy" claim, Howell contends that Hebron and Caldwell knew each other and shared animus against Howell because of his cooperation with the FBI investigation. Howell further asserts that Hebron convinced his former romantic acquaintance to visit the police station and file a formal complaint against Howell. The woman spoke to Caldwell about filing a complaint, but never actually filed one.

The district court found that these facts were insufficient to implicate Hebron in a § 1983 claim. Moreover, we note that, at oral argument, Howell's counsel conceded that the First Amendment claim against Hebron was probably due to be dismissed for lack of evidence. We agree, and affirm the district court's dismissal of the First Amendment retaliation claim against Hebron.

Regarding the retaliation claim against Mayor Toney, Howell asserts only that Toney signed Caldwell's recommendation that Howell be discharged. Howell offers no evidence that Toney participated in the actual Board hearing in any way, or that he endorsed Caldwell's recommendation with knowledge of

14

any retaliatory motive.[5]  For these reasons, we affirm the dismissal of the First Amendment retaliation claim against Toney.

4.

Finally, we consider the First Amendment retaliation claim against the town of Ball. Unlike the individual defendants, the defense of qualified immunity is not available to the town of Ball.  *See Stefanoff v. Hays Cty., Tex.*, 154 F.3d 523, 525 (5th Cir. 1998).  Thus, we must consider whether the requirements for municipal liability for constitutional violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny are satisfied in this case.

Under *Monell*, municipal liability for constitutional torts arises when the execution of an official policy causes the plaintiff's injury.  *See Monell*, 436 U.S. at 694.  A municipal liability claim under *Monell* usually involves allegations of an unconstitutional policy of general applicability, formally adopted by an official policy maker or informally established through long-standing practice or custom.  A single unconstitutional action, however, may be sufficient in rare circumstances to impose municipal liability under *Monell*, if undertaken by the municipal official or entity possessing "final policymaking authority" for the action in question.  *See Brown v. Bryan Cty., Okla.*, 219 F.3d 450, 461 (5th Cir. 2000) ("[A] single decision by a[n official] policy maker may, under certain circumstances, constitute a policy for which the County may be liable."); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal

---

[5] In addition, we note that, in Howell's briefing, he devotes only cursory attention to the § 1983 claims against Toney. Howell mentions Toney's conduct only twice in over seventy pages of appellate briefing, and never clearly articulates the substance of his claims against Toney. *See Douglas W. ex rel. Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 210–11 n. 4 (5th Cir. 1998) (per curiam) (stating that an appellant's "failure to provide any legal or factual analysis of [an] issue on appeal waives that issue").

policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—*because even a single decision by such a body unquestionably constitutes an act of official government policy.*" (emphasis added)).

The town of Ball does not dispute that the Board was the "official policy maker" for the purposes of municipal liability.  Nor can Ball credibly dispute that Howell has offered some evidence suggesting that Police Chief Caldwell harbored retaliatory animus.  Thus, the dispositive question is simply whether retaliatory animus is also chargeable to the Board itself.  In other words, we must consider whether Howell has offered some evidence establishing that his involvement in the FBI investigation motivated the Board's approval of Caldwell's recommendation that Howell be fired.  This motive can be established by offering evidence that the Board itself harbored retaliatory animus, or that it ratified both Caldwell's recommendation for discharge and the retaliatory animus backing it.  *See, e.g., Culbertson*, 790 F.3d at 621 ("If a final policymaker approves a subordinate's recommendation and also the subordinate's reasoning, that approval is considered a ratification chargeable to the municipality."); *see also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001) (stating that a plaintiff "must impute [a subordinate's] allegedly improper motives to the board by demonstrating that the board approved both [the subordinate's] decision and the basis for it").

Our review of the evidence demonstrates a genuine dispute of fact regarding whether Howell's protected activity was a motivating factor in the Board's decision to adopt Caldwell's recommendation.  First, the Board had knowledge of Caldwell's retaliatory motive when it approved the recommendation to fire Howell. Howell asserts in his deposition that, when

given an opportunity to speak at the hearing, he told the Board that he considered his discharge to be an act of "revenge." Although this statement, standing alone, may be too vague to confer upon the Board knowledge of Caldwell's retaliatory motive, the Board defendants' own depositions suggest that Howell's statement was actually more detailed. More importantly, the Board understood Howell's statement to mean that he was being fired for assisting in the FBI investigation.[6] The Board, however, did not inquire further into this allegation; instead the Board reflexively accepted Caldwell's recommendation with no further ado.

A jury reasonably could infer the Board's ratification of Caldwell's retaliatory animus from its cursory approval of Caldwell's recommendation that Howell be fired, as the Board, acting as the official policy maker, reflexively approved Howell's discharge with awareness of the alleged retaliatory motive behind it. *Cf. Beattie*, 254 F.3d at 603. Howell, however, also offers further evidence suggesting the Board's liability. Specifically, Howell has submitted deposition testimony from Vernon Altenberger, a Ball resident who frequently socialized with town officials. Altenberger asserts that he overheard one member of the Board, Alderman Giddings, admit to several townspeople that Howell was fired because he wore a wire for the FBI investigation. Other members of the Board may dispute Giddings's assessment of the Board's rationale for firing Howell; nevertheless, this admission is sufficient here to create a genuine dispute of fact over the motivating factor in the Board's decision. Accordingly, we vacate the district

---

[6] *See, e.g.*, Deposition of Alderwoman Covington, at 12 (stating that, when given a chance to speak, Howell informed the Board that he was being fired for helping in the prosecution of Hebron); Deposition of Alderman Robertson, at 16–17 (stating that Howell told the Board that he was being fired for his involvement in the FBI investigation).

court's summary judgment for the town of Ball and remand for proceedings not inconsistent with this opinion.

## D.

In sum, we conclude that the district court erred in dismissing Howell's constitutional claim against the town of Ball. We hold that, on the record before us, Howell has shown that his involvement in the FBI investigation was not within the ordinary perimeters of his job duties, and thus that his involvement in the FBI investigation was a protected First Amendment right. We have further held, however, that the district court's error does not lead to relief for Howell against the individual defendants. This is true because Howell's First Amendment claim was not "clearly established" at the time of his discharge. Thus, the individual defendants are entitled to qualified immunity, and the district court properly dismissed Howell's claim against each of them.

Howell's First Amendment claim against the town of Ball, however, presents a different standard of review because qualified immunity is not available to a municipality. Accordingly, we hold that Howell has offered evidence creating a genuine dispute of material fact regarding whether the town of Ball, acting through its official policy maker, the Board of Aldermen, is liable for the discharge of Howell in retaliation for his involvement in the FBI investigation, either through its own motivation or through ratification of Police Chief Caldwell's motive. The culpability of the Board is now a question for the appropriate fact finder, and we remand the First Amendment retaliation claim against the town of Ball for proceedings not inconsistent with this opinion.

## V.

Next, Howell contends that the district court erred in dismissing his FCA claims against the individual defendants. The district court did so after

concluding that the relevant section of the FCA, 31 U.S.C. § 3730(h), created a cause of action against only the plaintiff's employer. Section 3730(h) states that:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h).

Given that it was undisputed that only the town of Ball was Howell's employer, the district court dismissed the FCA claims against the individual defendants. Howell acknowledges that, traditionally, only an "employer" was subject to suit under the FCA. Howell, however, points to a 2009 amendment to the FCA, which he urges expands liability to include non-employer defendants. *See* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624–25. Howell emphasizes that the 2009 amendment to the FCA removed the express reference to retaliatory acts committed by an "employer." According to Howell, the removal of the "employer" reference indicates a legislative intent to broaden the class of viable defendants.

Howell, however, cites no authority interpreting the FCA's 2009 amendment to expand liability to include non-employer individuals.[7] More

---

[7] Contrary to Howell's contention at oral argument, this court's recent opinion in *United States ex rel. Bias v. Tangipahoa Parish Sch. Bd.*, 816 F.3d 315 (5th Cir. 2016), does not stand for the proposition that non-employer individuals may be held liable under the amended version of the FCA. *See Tangipahoa*, 816 F.3d at 322 n.2 ("This court has not previously addressed [whether the amended FCA creates individual liability for supervisors], and we do not reach it now as Bias filed his FCA retaliation claim against Stant and Foster only in their official capacities."). In fact, the *Tangipahoa* court favorably cited the district

importantly, viewing the changes to § 3730(h) as a whole, it is clear that the reference to an "employer" was deleted to account for the broadening of the class of FCA plaintiffs to include "contractors" and "agents," not to provide liability for individual, non-employer defendants. *See Fed. Trade Comm'n v. Jantzen, Inc.*, 386 U.S. 228, 234–35 (1967) (stating that, when considering the effect of an amendment on legislation, courts must "read the Act as a whole . . . [and not] ignore the common sense, precedent, and legislative history of the setting that gave it birth" (internal quotation marks omitted)). As this court has noted, "Congress is presumed to be aware of judicial interpretations of the law, and . . . is assumed to have acted with awareness of judicial interpretations of prior law." *Dresser Indus., Inc. v. United States*, 238 F.3d 603, 614 n.9 (5th Cir. 2001) (internal quotation marks omitted). Before the passage of the 2009 amendments, federal courts uniformly held that the FCA created a cause of action against only a plaintiff's employer. Adopting Howell's argument means concluding that Congress overturned this precedent, not by the insertion of express language expanding liability, but only by mere implication.

We decline to accept such a forced argument regarding Congress's intent. Accordingly, the district court did not err in dismissing Howell's FCA claims against the individual defendants.

## VI.

For the foregoing reasons, we conclude that the district court erred only in dismissing Howell's § 1983 claim against the town of Ball. As a result, we REVERSE and VACATE its grant of summary judgment for the First Amendment retaliation claim against the town of Ball. With respect to the

court's opinion in this case, agreeing with the district court that "requiring some employment relationship acts as a continuing limiting principle" under the FCA. *See id.* at 324.

No. 15-30552

still-pending FCA claim against the town of Ball, we DISMISS Ball's cross-appeal for lack of appellate jurisdiction.  We AFFIRM the district court's decision in all other respects.  This case is REMANDED for further proceedings not inconsistent with this opinion.

AFFIRMED in part; DISMISSED in part;

VACATED and REVERSED in part; REMANDED.