RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0141P (6th Cir.)
File Name: 03a0141p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MUNCIE POWER PRODUCTS, INC.,

    *Plaintiff-Appellant,*

    *v.*

UNITED TECHNOLOGIES AUTOMOTIVE, INC.,

    *Defendant-Appellee.*

No. 01-4146

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00214—Herman J. Weber, District Judge.

Argued: March 14, 2003

Decided and Filed: May 15, 2003

Before: COLE, GILMAN, and BRIGHT, Circuit Judges.[*]

---

[*] The Honorable Myron H. Bright, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

---

## COUNSEL

**ARGUED:** David P. Kamp, WHITE, GETGEY & MEYER, Cincinnati, Ohio, for Appellant. Donald J. Mooney, Jr., ULMER & BERNE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** David P. Kamp, WHITE, GETGEY & MEYER, Cincinnati, Ohio, for Appellant. Joseph P. Thomas, ULMER & BERNE, Cincinnati, Ohio, for Appellee.

---

## OPINION

---

R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant Muncie Power Products, Inc. ("Muncie") appeals summary judgment granted for Defendant-Appellee United Technologies Automotive, Inc. ("UTA") in this diversity suit for contribution. Using Ohio's choice-of-law rules, the United States District Court for the Southern District of Ohio concluded that Indiana law applied to Muncie's claim. Because Indiana does not permit actions for contribution, the district court then granted UTA's motion for summary judgment on Muncie's contribution claim. Muncie argues that even under Ohio choice-of-law rules, Ohio law, which recognizes claims for contribution, should apply instead of Indiana law. For the reasons stated below, we **AFFIRM** the decision of the district court.

### I. BACKGROUND

#### A. Factual Background

Muncie sells specialized parts to the trucking industry. In 1969, in consultation with Amos Plastics ("Amos"), Muncie designed a polyethylene hydraulic tank. From 1969 until 1976, the tank was manufactured by Amos at its Rotocast Plant in Indiana and sent to Muncie's facilities in Indiana for

installation of diffusers and supply ports. In 1976, Muncie, working with engineers at the Rotocast Plant, redesigned the tank and thereby eliminated the need to install the diffusers and supply ports. In 1977, Alma Plastics Company purchased the Rotocast Plant, and in 1984 UTA acquired all the stock of Alma Plastics. According to the terms of the Stock Purchase Agreement, UTA was liable for any products liability claims after 1986.

In 1994, William Bowling was severely and permanently injured in Cincinnati, Ohio while driving behind a truck on which one of Muncie's hydraulic tanks was mounted. The tank, manufactured at the Rotocast Plant some time between 1977 and 1981, spilled hydraulic fluid onto the highway. The wet highway surface caused Bowling's car to skid out of control and crash. In 1995, Bowling filed a complaint in Ohio state court against the driver of the truck, the owner of the truck, and Muncie, asserting claims for design defect, manufacturing defect and failure to warn. Bowling sought both compensatory and punitive damages and the trial was bifurcated to consider first the issues of liability and compensatory damages, and second the issue of punitive damages. On May 7, 1998, a jury returned a verdict for Bowling in the amount of $1,500,000 for compensatory damages, finding the driver, owner, and Muncie jointly and severally liable and apportioning seventy-five percent of the damages to Muncie, and twenty-five percent to the driver and owner of the truck. A partial judgment was entered by the district court on May 15, 1998. In an effort to avoid the next stage of the trial regarding Bowling's claim for punitive damages, the parties settled the case for a total of "$2,100,000 in compensatory damages." Muncie, individually and through its insurers, agreed to pay $1,725,000 and the rest, $375,000, was paid by the driver and owner of the truck. In connection with the settlement, Bowling signed a "Full Release of All Claims and Demands" on June 1, 1998, releasing Muncie and its insurer from any future liability.

## B.  Procedural History

On December 24, 1995, after Bowling filed his lawsuit, Muncie asserted third-party claims against UTA. However, on December 20, 1996, Muncie voluntarily dismissed its claims against UTA as a third-party defendant. On February 26, 1999, after the trial and settlement, Muncie filed a complaint against UTA in Ohio state court seeking contribution and/or indemnification. UTA removed the case to federal district court on March 24, 1999 based on the diversity of the parties. On July 14, 1999, UTA filed two motions: (1) a motion to bifurcate the issue of Muncie's right to contribution from the underlying product liability issues; and (2) a motion to stay discovery regarding the issue of product liability. Both motions were granted on October 21, 1999.

On March 16, 2000, UTA filed a motion for summary judgment on Muncie's contribution and indemnification claims. In holding that Indiana, rather than Ohio, law applied to the case, the district court found that Indiana does not recognize claims for contribution among joint tortfeasors and granted in part UTA's motion for summary judgment. However, the district court denied UTA's motion for summary judgment on Muncie's indemnification claim and lifted the previously granted stay of discovery. Discovery then revealed that Muncie did not have a valid claim for indemnification, and Muncie voluntarily dismissed its indemnification claim on October 12, 2001. Muncie filed this timely notice of appeal from the grant of summary judgment on its contribution claim on October 23, 2001.

## II.  DISCUSSION

## A.  Standard of review

This Court reviews the district court's summary judgment decision *de novo*. *See Watkins v. Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is appropriate if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).

### B.  Choice of law

Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987). Therefore, the district court was required to apply Ohio choice-of-law rules. In tort actions, Ohio traditionally relied upon *lex loci delicti*, the place where the tort occurs, in determining the law to be applied in actions requiring the court to decide on the choice of law. However, the Ohio Supreme Court held in *Morgan v. Biro Manufacturing*, 15 Ohio St. 3d 339, 342 (1984), that *lex loci delicti* would no longer be presumed to apply when a choice of law was at issue. The court held that Ohio courts must look instead to the balancing test set forth in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS, beginning with section 146, in determining which state's law to apply. *Morgan*, 15 Ohio St. 3d at 341-42 ("[I]t is apparent that the traditional rule of *lex loci delicti* is still viable in Ohio, but is no longer used to automatically determine the prevailing state law. Other

interests of the states involved within the controversy must be thoroughly analyzed. . . . We hereby adopt the theory stated in the Restatement of the Law of Conflicts."); *see also Charash v. Oberlin Coll.*, 14 F.3d 291, 296 (6th Cir. 1994) (explaining that Ohio now applies the Restatement analysis rather than *lex loci delicti*); *Lawson v. Valve-Trol Co.*, 81 Ohio App. 3d 1, 4 (Ohio App. 1991) (same); *Barile v. Univ. of Va.*, 30 Ohio App. 3d 190, 193 (Ohio App., 1986) (same). Therefore, in Ohio, a party may overcome the presumption that the law of the place where the injury occurs will be applied to a tort action, if it can demonstrate that another state has a more significant relationship to the action.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 (1971) governs personal injuries and states that:

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Though section 146 instructs courts to apply the rule of *lex loci delicti*, it requires the application of the law of another state if that state has a "more significant relationship" to the injury.

Section 145 of the Restatement, which governs torts generally, sets forth the analysis to be undertaken by courts in a tort action in determining whether another state has a "more significant relationship." This section directs courts to consider four factors and states in relevant part:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a)  the place where the injury occurred,
(b)  the place where the conduct causing the injury occurred,
(c)  the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d)  the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

Section 6 provides further guidance for analysis under the Restatement and describes several general principles to be considered when conducting a choice-of-law analysis. These principles include: the interests of each state in having its law applied; the relevant policies of the forum; certainty, predictability and uniformity of result; ease in the determination and application of the law to be applied; the promotion of interstate order; and the basic policies underlying the field of law. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).

Furthermore, section 173 of the Restatement, which governs contribution and indemnity among tortfeasors, provides that "[t]he law selected by application of the rule of § 145 determines whether one tortfeasor has a right to contribution or indemnity against another tortfeasor." RESTATEMENT (SECOND) CONFLICT OF LAWS § 173 (1971).

## C.  Application of Ohio's Choice-of-Law Rule to Muncie's Claim

The applicable law in this case determines whether Muncie is able to assert a claim against UTA. In Ohio, jointfeasors may bring actions for contribution. OHIO REV. CODE ANN. §§ 2307.31, 2307.32 (West 2002). Indiana, in contrast, does not recognize claims for contribution among joint tortfeasors. *See Consol. Rail Corp. v. Allied Corp.*, 882 F.2d 254, 258 (7th Cir. 1989) ("[T]here is no dispute that Indiana does not recognize actions for contribution among joint tortfeasors.") (citing *Jackson v. Record*, 5 N.E.2d 897 (1937)); *see also Elcona Homes Corp. v. Mapco Gas McMillan Bloedell, Ltd.*, 475 N.E.2d 713, 715 (Ind. Ct. App. 1985) ("Indiana adheres to the long-standing rule prohibiting contribution among joint tort-feasors.") (citations omitted).

Because of the dearth of case law in this area, both parties had difficulties finding case support for their positions. In arguing that Ohio law should apply to this action, Muncie relies principally on *California Union Insurance Co. v. Therm-O-Disc, Inc.*, 1993 Ohio App. LEXIS 239 (Ohio App. Jan. 21, 1993) (unreported). In *Therm-O-Disc*, four people were killed in Michigan when a coffeemaker caused a fire that destroyed the cabin in which they were staying. 1993 Ohio App. LEXIS 239, at *2-*3. The Michigan jury found Mr. Coffee, the maker of the defective appliance, guilty of: (1) willful and wanton misconduct; (2) negligence in the design and manufacture of the coffee maker; and (3) breach of an implied warranty of fitness. *Id.* at *3. After a jury awarded plaintiffs $42 million, consent judgments were entered and a settlement was reached for over $20 million. *Id.* at *3-*4.

The next year, Mr. Coffee and California Union Insurance filed a complaint for contribution in Ohio state court against Therm-O-Disc, the supplier of allegedly defective components for the coffeemaker. *Id.* at *4. On appeal, the court determined that under the significant relationship test of sections 6 and 145 of the Restatement, the law of Michigan,

instead of Ohio, should be applied. *Id.* at *20-*21. In particular, the appellate court took into account fourteen factors related to the underlying tort claim in its choice-of-law analysis. *Id.* at *21-*22. Because twelve of the factors related to the state of Michigan, the court found that "balancing these fourteen factors clearly establishes that the state of Michigan possessed the most significant relationship to the parties and events." *Id.* at *22.

We find this case inapplicable to the present case for three reasons: (1) it was unreported and therefore has no precedential value; (2) the court considered several factors not outlined in the Restatement, for example, the place where the estates of the decedents were opened; the residency of the estate administrators; and the place where the wrongful death action was filed and; (3) the appellate court considered several factors that relied explicitly on the rule of *lex loci delicti* and the fact that the tort action was filed in Michigan, including for example, the place where the jury verdict was rendered; the place where the verdict was appealed; and the place where the settlement occurred. *Id.* at *20-*22.

UTA principally relies on *Reike v. Fairmont Homes, Inc.*, No. C-1-97-70, (S.D. Ohio Nov. 23, 1999) (unreported). In *Reike*, a mobile home that was manufactured in Indiana and located in Ohio caught fire, killing two children. No. C-1-97-70 at *1. The administrators of the children's estate filed suit against the successor in interest of the manufacturer of the mobile home, Fairmont Homes, Inc. ("Fairmont"), in Ohio state court. *Id.* Fairmont then filed a third-party complaint for indemnification and contribution against Champion International Corp. ("Champion") and Armstrong Cork Company, two of the manufacturers of materials used to build the home. *Id.* Champion moved for summary judgment on the contribution claim, arguing that under Ohio's choice-of-law rules, Indiana law should apply and Indiana does not recognize claims for contribution. *Id.* at *18. The district court performed a choice-of-law analysis under the Restatement and concluded that Indiana, and not Ohio, law

applied to the third-party claims for contribution and indemnification. The district court held that, because the relationship between Fairmont and Champion was centered entirely in Indiana, Indiana had a more significant relationship to the contribution and indemnification claims than Ohio.

We do not place substantial weight on the decision in *Reike*. Apart from being unreported, *Reike* was decided by the same district judge as in this case, and the choice-of-law analysis and related discussion in that case is taken nearly verbatim from the Memorandum and Opinion in this case. Therefore, though we find the district court to be consistent in its approach to choice-of-law issues, *Reike* adds little additional support to UTA's argument in this case.

While we acknowledge that there is a lack of relevant case law to guide our decision, a proper analysis of Ohio's choice of law under *Morgan* requires application of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS. The district court did not perform a detailed analysis using the factors outlined in the Restatement. Instead, the court focused generally on whether Indiana had a more significant relationship to Muncie's claim than Ohio. In its decision, the district court concluded that Ohio's interest in compensating Bowling was satisfied, and that the relationship between Muncie and UTA was centered principally in Indiana.

Though we agree with the result reached by the district court, we do so based on an analysis of the factors outlined in the Restatement. In applying the four factors set forth in section 145 and the general principles governing choice-of-law considerations as set forth in section 6, we find that Indiana has the most significant relationship to this contribution action and its law should apply.

*1. The place where the injury occurred*

Ohio is the place where the injury giving rise to Muncie's claims against UTA occurred. However, under the Restatement analysis, this factor is to be considered in

conjunction with the other factors and assigned the appropriate weight.

## 2. *The place where the conduct causing the injury occurred*

The conduct causing the injury occurred both in Ohio and Indiana. The jury verdict found all three defendants, the driver of the truck, the owner of the truck, and Muncie, guilty of causing Bowling's injuries. Because the jury found the driver and owner twenty-five percent responsible for Bowling's injuries, it can be said that some of the conduct causing the injury occurred in Ohio. However, the jury found Muncie seventy-five percent responsible for the injuries caused by the defective design and manufacture of the tank and the lack of adequate warnings. If Muncie's contribution claim is correct and UTA is also directly responsible for Bowling's injuries, the conduct giving rise to Muncie's claims against UTA occurred in Indiana. The tank was designed and manufactured by Muncie and UTA in Indiana and any appropriate warnings would have been discussed and implemented by the two companies in Indiana. Accordingly, as the jury verdict supports, the majority of the conduct causing injury to Bowling occurred in Indiana.

## 3. *The place of incorporation and place of business of the parties*

Muncie is incorporated in Indiana and its principal place of business is Indiana; UTA is incorporated in Delaware and its principal place of business is Michigan. This factor weighs in part in favor of Indiana, though it is of lesser significance than the other factors.

## 4. *The place where the relationship, if any, between the parties is centered*

It is this factor that weighs most heavily in favor of applying Indiana law. Though Appellants urge us instead to consider Ohio law because the actual accident occurred in Ohio, the relationship between Muncie and UTA was centered principally in Indiana. *See Cheatham v. Thurston Motor Lines*, 654 F. Supp. 211, 214 (S.D. Ohio 1986) (explaining that for third-party claims in product liability actions, courts should look to where the product was sold, manufactured, and modified, not solely to the place where the product caused injury).

Since 1969, Muncie has worked with UTA and its predecessors in developing designs for the hydraulic tanks in Indiana. In 1976, Muncie approved the new design for the tank involved in the accident at issue here, and that tank was manufactured by UTA's predecessor, Alma Plastics, in Indiana. At all times relevant to this action, Muncie took delivery of the tanks in Indiana at its facility in that state. Muncie's action against UTA alleges that UTA is jointly responsible for the defectively designed and manufactured tank and the lack of adequate warnings. Therefore, any design or manufacturing defects or failure to provide proper warnings were the result of the business relationship between Muncie and UTA occurring wholly in Indiana.

Though the first factor weighs in favor of applying Ohio law, the Restatement states explicitly that the location of the injury is not dispositive. *See* RESTATEMENT § 173 cmt. a ("The state where conduct and injury occurred will not by reason of these contacts alone be the state that is primarily concerned with the question whether one tortfeasor may obtain contribution against another."). The balance of the factors clearly supports the application of Indiana law. In particular, the second and fourth factors weigh heavily in favor of applying Indiana law. As section 145 instructs, the factors "are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT § 145; *see also Miller v. Long-Airdox Co.,* 914 F.2d 976, 978 (7th Cir. 1990) ("Generally, in a tort case, the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred."). Factors two and four are clearly the most important factors in this action because it is a claim for

contribution based on a product liability claim concerning design and manufacturing defects allegedly occurring in Indiana. Though we do not intentionally ignore the fact that Bowling's lawsuit against Muncie was filed and decided in Ohio, we find that the previous lawsuit does not exclusively guide the analysis that we undertake here.

Furthermore, in considering the general principles governing choice-of-law analysis outlined in section 6, the law of Indiana is most appropriate. *See MacDonald v. Gen. Motors Corp.* 110 F.3d 337, 342 (6th Cir. 1997) (explaining that the general principles governing choice of law under § 6 should be used to guide choice-of-law analysis); *see also* RESTATEMENT § 173, cmt. a (noting that there is a "growing realization that all issues in tort need not be governed by the same law"). We concede that Ohio is interested in preventing the sale of defective products in its state. That interest, however, was satisfied by the judgment against Muncie and the award of damages to Bowling in the state-court action. *See Cheatham*, 654 F. Supp. at 214 ("In product liability claims, the primary interest of a state is to deter the sale and/or manufacture of negligently or defectively manufactured goods to that state's citizens."); *see also Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1360 (8th Cir. 1994) ("[t]he Missouri law of products liability . . . is even more concerned with compensating injured victims and protecting the expectation interests of the victim.") (citations omitted). Muncie's subsequent claims against a third party to recover part of the damages resulting from the tort action have little effect on Ohio's interest in the underlying tort claim. Bowling's award will not be reduced or increased as a result of Muncie's contribution action, and Muncie's liability for Bowling's injuries similarly will remain unchanged. *See* RESTATEMENT § 145 cmt. c (stating that 'the interest of a state in having its tort rule applied ... will depend on the purpose sought to be achieved by that rule').

Finally, Appellants rely on the fact that the tort occurred in Ohio and argue that Ohio has developed an entire tort scheme that includes actions for contribution and indemnification. Though Ohio's policy is to recognize actions by joint tortfeasors for contribution, Indiana's policy not to recognize such actions is more important here because Indiana is more interested in determining the rights of parties whose conduct was centered in its state. Therefore, Indiana law applies to this contribution claim and Muncie's claim must fail as Indiana does not recognize actions for contribution.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.