[Cite as *Walker v. Nationwide Mut. Ins. Co.*, 2018-Ohio-1810.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| William D. Walker, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-894 |
| v. | : | (C.P.C. No. 14CV-13157) |
| Nationwide Mutual Insurance Company, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on May 8, 2018

**On brief:** *Caryn Groedel & Associates, Co., LPA, Matthew S. Grimsley,* and *Caryn M. Groedel,* for appellant. **Argued:** *Matthew S. Grimsley.*

**On brief:** *Jones Day* and *Matthew A. Kairis,* for appellee. **Argued:** *Matthew A. Kairis.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiff-appellant, William D. Walker, appeals from the decision of the Franklin County Court of Common Pleas entering judgment in favor of defendant-appellee, Nationwide Mutual Insurance Company ("Nationwide"), on Walker's claims for wrongful termination in violation of public policy. The trial court determined that Tennessee law applies to Walker's claims, and that they are time-barred under that state's statute of limitations. For the following reasons, we affirm.

## I. Factual and Procedural Background

{¶ 2} Nationwide is an Ohio corporation with its principal place of business in Franklin County, Ohio. (Jun. 1, 2016 Answer at ¶ 2.) Walker first started working for Nationwide in 1991 in Indianapolis, Indiana. In 1992, Nationwide transferred him to

Tennessee to work in its South Central Region, which encompasses Tennessee, Kentucky, Arkansas, Mississippi, Minnesota, and Iowa. Walker was a resident of Tennessee during the remainder of his employment with Nationwide, which was terminated on April 2, 2013. (Answer at ¶ 5-6; Mar. 3, 2015 Second Am. Compl. & Answer at ¶ 1, 5-6, 51; Aff. of Terry F. Saharski, hereinafter "Saharski Aff.," at ¶ 2 & 8.)

{¶ 3}   From December 2001 until the termination of his employment, Walker held the title of Sales Manager.[1] In this position, Walker was responsible for recruiting and managing new insurance agents for Nationwide. Beginning in 1998, Walker's direct supervisor was Terry Saharski, who held the title of Associate Vice President of Sales at the time of Walker's termination. Saharski lived and worked in Tennessee. (Second Am. Compl. & Answer at ¶ 13 & 15; Saharski Aff. at ¶ 1, 6- 7.)

{¶ 4}   Saharski reported to Shelley Brazeau Temple, who was Nationwide's Regional Vice President for the South Central Region. Temple lived in Tennessee beginning in 2011. As Nationwide's Regional Vice President, Temple had final authority over all personnel decisions in the South Central Region. (Aff. of Shelley Brazeau Temple, hereinafter "Temple Aff.," at ¶ 2-4, 7.)

{¶ 5}   As a Sales Manager, Walker received a base salary and variable compensation in the form of a possible bonus based on the amount of the "loss ratio" of the agents he managed. The loss ratio was a calculation of the defined losses incurred for paid claims, plus certain expenses, divided by the total amount of premiums earned. Walker was only to receive a variable compensation bonus if his agents attained a loss ratio of 55 percent or less. Claims based on catastrophic losses, such as tornados, hurricanes, or floods are not included in the loss ratio calculation. (Pl.'s Memo. Contra Def.'s Mot. for Summ. Jgmt., Ex. D; Second Am. Compl. & Answer at ¶ 25-31.)

{¶ 6}   Walker's loss ratio for 2012 was calculated at 55.2 percent. Consequently, he did not receive a variable compensation bonus for that year. Walker contacted Robert McCartney, a Nationwide employee on its Sales Operation Automation team, for assistance with the calculation of his loss ratio and information on how catastrophic claims were designated. After researching the issue, Walker reported to Nationwide that he believed

---

[1] Walker refers to his position title as "Agency Sales Manager" and Nationwide refers to it as "Sales Manager." The inconsistency does not amount to a dispute of an issue of material fact.

that the company had failed to designate a number of claims arising from hail storms as catastrophic, resulting in an incorrect calculation of his loss ratio. (Second Am. Compl. & Answer at ¶ 31-33.)

{¶ 7} Walker alleges that the designation of these claims as non-catastrophic constituted "insurance fraud." He also alleges that in January 2013, he provided a report describing the issue to an upper-level claims manager, who subsequently circulated it among Nationwide's upper management. Walker also claims that he met with Saharski on February 7, 2013 "to discuss the miscoding issue," and that Saharski rebuffed him and accused him of trying to procure an additional bonus. (Second Am. Compl. & Answer at ¶ 42.) Walker alleges that when he and Saharski met a week later, Walker gave him evidence that Nationwide was engaged in "insurance fraud." Walker also claims that he advised an agent to seek legal advice immediately before the agent was fired by Saharski. Nationwide denies each of the foregoing allegations. (Second Am. Compl. & Answer at ¶ 36, 39-45.)

{¶ 8} On March 15, 2013, Walker was notified that his employment with Nationwide was terminated effective April 2, 2013. The decision was made by Temple and Saharski concurred. (Second Am. Compl. & Answer at ¶ 51; Saharski Aff. at ¶ 8; Temple Aff. at ¶ 8.)

{¶ 9} Walker filed suit against Nationwide in the Franklin County Court of Common Pleas on December 16, 2014. He alleged two claims of wrongful termination in violation of public policy. The first claim arose from an allegation in the original complaint that Nationwide retaliated against Walker for testifying against Saharski and Nationwide in a lawsuit the company filed against several of its insurance agents. The second claim arose from Walker's allegation that Nationwide fired him for reporting the "insurance fraud" of not properly designating the claims of catastrophic loss. (Dec. 16, 2014 Compl.)

{¶ 10} Walker filed an amended complaint on December 18, 2014. On February 17, 2015, Nationwide moved the trial court to dismiss the claims under Civ.R. 12(B)(6). Nationwide argued that, under Ohio's borrowing statute, R.C. 2305.03, Tennessee's one-year statute of limitations should apply to Walker's claims, rendering them untimely. In response, Walker filed a motion for leave to file a second amended complaint under Civ.R.

15(A).[2] The trial court sustained Nationwide's motion and overruled Walker's motion to file a second amended complaint as futile. (Apr. 21, 2015 Decision and Entry.)

{¶ 11} Walker appealed. We reversed. We observed that the "set of allegations" in the second amended complaint tying the decision to terminate Walker to Ohio went "far beyond what was contained in the first amended complaint," and noted:

> If orders came from corporate headquarters to withhold Walker's pay in 2013 for improper reasons and then to fire him, and the orders were merely carried out in Tennessee, the second amended complaint does in fact state a claim which could be adjudicated in Ohio courts under Ohio law.

*Walker v. Nationwide Mut. Ins. Co.*, 10th Dist. No. 15AP-520, 2015-Ohio-5371, ¶ 29.

{¶ 12} After remand, Nationwide filed a motion for summary judgment. Citing the affidavits of Saharski and Temple, Nationwide argued that the undisputed evidence showed that the decision to terminate Walker was made and carried out in Tennessee, and that Walker could not show that Ohio had a more significant relationship to his claims to overcome the presumption that Tennessee law should apply. (June 2, 2016 Mot. for Summ. Jgmt.)

{¶ 13} In opposition to Nationwide's motion, Walker pointed to a number of pieces of evidence that he believed demonstrated that the orders to withhold his pay and terminate his employment came from the company's Columbus headquarters. These included the following: a separation letter from a company vice president in Columbus; a separation agreement created by the company's general counsel in Columbus; a draft termination letter for Walker, to be delivered by Saharski, stating that the "decision was reached in conjunction with our Office of Associate Relations and Office of General Counsel and fully supported by appropriate South Central Regional leadership"; the fact that Nationwide processed and administered Walker's payroll in Columbus; and the fact that the variable compensation plan was a creation of the company's employees in its Columbus office. (Oct. 6, 2016 Memo. Contra.)

{¶ 14} After determining that the evidence cited by Walker could not overcome the presumption that Tennessee law applied to his claims, the trial court sustained

---

[2] The second amended complaint modified one of the wrongful termination claims to arise from Walker allegedly suggesting that an insurance agent seek legal counsel before being terminated instead of the allegation that he was fired for testifying against Nationwide.

Nationwide's motion. (Nov. 30, 2016 Decision and Entry.) Walker again appealed and asserts the following assignment of error:

> The trial court erred in granting Appellee's Motion for Summary Judgment on the basis that Appellant's claims are barred by Tennessee's one-year statute of limitations when, in fact, Appellant's claims were brought under Ohio law, are timely pursuant to Ohio's four-year statute of limitations, and the evidence, when construed in his favor, establishes that Ohio has the most significant relationship to this lawsuit.

## II. Standard of Review

{¶ 15} Summary judgment decisions are reviewed under a de novo standard. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 8. A court may enter summary judgment only if the undisputed evidence in the record shows that there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party. Civ.R. 56(C). The nonmoving party is entitled to have the evidence construed most strongly in its favor. *Id.*

{¶ 16} A de novo standard also applies to appellate review of a trial court's choice of law determination. *Hoyt v. Nationwide Mut. Ins. Co.,* 10th Dist. No. 04AP-941, 2005-Ohio-6367, ¶ 24, citing *White v. Crown Equip. Corp.*, 160 Ohio App.3d 503, 2005-Ohio-1785, ¶ 7 (3d Dist.).

## III. Analysis

{¶ 17} A plaintiff with a cause of action that is time-barred in the state where it accrued may attempt to file it in a state with a longer statute of limitations. The filing state's borrowing statute will circumvent such an attempt at forum shopping by requiring the court to apply the statute of limitations of the state where the action accrued. *See Combs v. Internatl. Ins. Co.*, 354 F.3d 568, 589 (6th Cir.2004) (describing history and purpose of borrowing statutes). Ohio's borrowing statute states that:

> No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired or the period of limitation that applies to that action under the laws of this state has expired.

R.C. 2305.03(B).

{¶ 18} "Where the cause of action accrued is the key element of the borrowing statute." *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, ¶ 42. Thus, whether or not Ohio's borrowing statute applies to Walker's wrongful termination claims depends on where they "accrued."

{¶ 19} Historically, under the lex loci delicti rule, "the substantive law of the place where the injury occurred was controlling" to determine where a tort action accrued. *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 340 (1984). The rule was applied inflexibly, in an "automatic" fashion "without reference to the facts of the case." *Id.* Accordingly, the Supreme Court of Ohio eventually adopted the analysis of Restatement of the Law 2d, Conflict of Laws, which asks which jurisdiction has the most significant relationship to the action:

> When confronted with a choice-of-law issue in a tort action under the Restatement of the Law of Conflicts view, analysis must begin with Section 146. Pursuant to this section, a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider the general principles set forth in Section 145. The factors within this section are: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation. All of these factors are to be evaluated according to their relative importance to the case.

*Id.* at 342.

{¶ 20} Because a plaintiff's injury in a wrongful termination claim is the loss of employment, the place where the plaintiff lives and works is the place of injury. *See Hoyt* at ¶ 27 (recognizing that a plaintiff's wrongful termination claim arose from "the injury to her employment," which occurred in the state where she "lived and worked"). Walker lived and worked in Tennessee at the time his employment was terminated. Thus, a presumption arises that the law of Tennessee applies to his wrongful termination claims. *Id.* (finding that the state where the plaintiff lost her employment was "presumed to be the state with the most significant relationship"); *Morgan* at 342.

{¶ 21} Walker argues that a presumption that the law of the place where the conduct causing the injury occurred may arise, in addition to the presumption based on the place of injury specifically recognized in *Morgan*. (Appellant's Brief at 23-24.) But the case he cites to support his argument, *Muncie Power Prods. v. United Technologies Automotive, Inc.*, 328 F.3d 870 (6th Cir.2003), did not recognize any presumption other than the one created by the place of injury. *Id.* at 874 (stating that "in Ohio, a party may overcome the presumption that the law of the place where the injury occurs will be applied to a tort action, if it can demonstrate that another state has a more significant relationship to the action"). There are no alternative presumptions in the choice of law analysis. As *Morgan* expressly states, the place where the conduct that caused the injury occurred is one of five "factors" that, when considered, may overcome the presumption to apply the law of the place of injury.

{¶ 22} Turning to this factor, there is scant evidence to support Walker's assertion that the conduct causing his injury occurred in Ohio. Nationwide submitted two affidavits in support of its contention that the decision to terminate Walker's employment was made and carried out in Tennessee. Temple avers that she made the decision to fire Walker, and Saharski states that Temple made the decision. According to Temple, Saharski concurred in the decision. Both affidavits state that Temple made the decision during the week of March 4, 2013. (Saharski Aff. at ¶ 8; Temple Aff. at ¶ 8.) Walker points to no evidence that demonstrates a reason to doubt Temple or Saharski, or any inconsistency in Nationwide's evidence on this issue. In fact, his briefing fails to even mention either affidavit. Instead, Walker points to a number of documents in the record, some of which were created in or have a tangential relationship to Ohio. For the following reasons, none of these documents raise a genuine issue of fact as to where the decision was made to terminate his employment or suggest that conduct contributing to his injury occurred in Columbus.

{¶ 23} First, Walker cites a letter stating that the "decision" to terminate his employment "was reached in conjunction with our Office of Associate Relations and Office of General Counsel," and was "supported by appropriate South Central Regional leadership." (Pl.'s Memo. Contra Def.'s Mot. for Summ. Jgmt., Ex. C.) Walker claims that this letter is evidence that the decision to fire him came from Ohio, and that Saharski was simply "instructed" to give it to him. (Appellant's Brief at 25.) Walker selectively presents

only one page of this document. According to the email that is the first page of the entire document, the page Walker presents is "a draft of communication" that Temple and Earl Lamons, the South Central Human Resources Director, "discussed" together before Lamons sent it to Temple on March 8, 2013 along with several other documents that he prepared to assist with terminating Walker's employment. (Def.'s Reply in Support of Mot. for Summ. Jgmt., Ex. 14.) Like Temple and Saharski, Lamons lives and works in Tennessee. (Saharski Aff. at ¶ 8.) Instead of creating an issue of fact as to where the decision was made to terminate his employment, the letter bolsters the assertions of Temple and Saharski that it occurred only in Tennessee. In addition, the March 8, 2013 date of the letter is consistent with Temple's assertion that she made the decision during the week of March 4, 2013.

{¶ 24} Second, Walker points to an email from Leslie Winkler, who worked at Nationwide's headquarters in Columbus, containing the terms of his separation.[3] Walker asserts that this letter shows that Winkler gave "*instructions* to Saharski on what to tell Walker during his upcoming termination meeting." (Emphasis sic.) (Appellant's Brief at 26.) The only instructions in Winkler's email are: (1) "When you meet with him, please ask for an alternate email address" and (2) tell Walker that Pete Hendey will send him the separation agreement. (July 27, 2016 Pl.'s Memo. Contra Def.'s Mot. for Summ. Jgmt., Ex. F.) This email demonstrates nothing more than Winkler performing administrative tasks to prepare for the termination of Walker's employment.

{¶ 25} Third, Walker provides a copy of the separation letter he received from Pete Hendey, Associate Vice President, Human Resources Associate Relations, asking him to review an attached severance agreement and advising him to have an attorney review it. (Def.'s Resp. to Pl.'s Mot. for Summ. Jgmt., Ex. A1.) Walker also points out that Nationwide admitted in an interrogatory that Hendey and Winkler, who worked in Columbus, participated in the decision to offer him a severance agreement. Nationwide's response to the interrogatory in question states that Temple, Saharski, Lamons, Winkler, and Hendey, were all "involved" in the decision to offer him severance. At any rate, this admission does not demonstrate that the decision to terminate Walker originated in Columbus, which is the material issue regarding the place of injury.

---

[3] In his brief, Walker identifies Leslie Winkler as a "Senior Associate Relations Consultant." (Appellant's Brief at 25.) This title does not appear in the email. Walker cites no portion of the record associating Winkler with this title.

{¶ 26} Fourth, Walker points to choice of law provisions in the severance agreement and the variable compensation plan requiring those agreements to be governed by Ohio law. (Appellant's Brief at 27.) Because Walker's case sounds in tort and does not arise from a breach of either of those agreements, any choice of law provision in them is irrelevant.

{¶ 27} Fifth, Walker points to the assertion—in his own affidavit opposing summary judgment—that Saharski told him that "the company" had decided to terminate his employment. (Appellant's Brief at 27.) This statement is not inconsistent with his or Temple's affidavits. Indeed, it would be strange if Saharski had not used this language, and, instead of referring to "the company," had specifically identified Temple as the decisionmaker to Walker during the period of his termination. The statement does not create a genuine issue of fact regarding the place where the decision was made or who made it.

{¶ 28} Sixth, Walker points out that his compensation was processed and administered at Nationwide's payroll department in Columbus. This fact is only marginally relevant and does not weigh in favor of applying Ohio law to Walker's claims.

{¶ 29} Finally, Walker also points out that the variable compensation plan was created by employees at Nationwide's Columbus headquarters and states that, pursuant to its terms, the company's Business Unit Chief Officer had "sole and absolute discretion of all aspects" of it. (Appellant's Brief at 27-28.) These facts provide little to no weight to support Walker's assertion that Nationwide engaged in any conduct in Ohio that led to his termination. To repeat, we identified the key issues on remand as follows:

> If orders came from corporate headquarters to withhold Walker's pay in 2013 for improper reasons and then to fire him, and the orders were merely carried out in Tennessee, the second amended complaint does in fact state a claim which could be adjudicated in Ohio courts under Ohio law.

*Walker* at ¶ 29.

{¶ 30} It is telling that, after remand and an opportunity to engage in discovery, the only evidence that Walker can point to in order to support the assertion that Nationwide's conduct in Columbus was improper or wronged him is the variable compensation plan itself and the fact that it was created there. The only reasonable inference is that discovery resulted in an absence of the key evidence that, if found, might have supported his claims.

At any rate, these facts about the variable compensation plan provide no evidence that any conduct leading to his injury occurred in Columbus. In short, the evidence in the record overwhelmingly points to Tennessee as the place where the conduct causing the injury occurred. The evidence cited by Walker does very little to shift the focus to Ohio.

{¶ 31} Nor does our consideration of the remaining factors identified by *Morgan* suggest that applying Ohio law to this dispute is the proper result. The third factor is "the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Id.* at 342. This factor is evenly balanced between Tennessee and Ohio because Walker is a resident of Tennessee and Nationwide is an Ohio corporation with its principal place of business in Columbus. The fourth *Morgan* factor is "the place where the relationship between the parties, if any, is located." *Id.* This factor leans toward the application of Tennessee law because Walker worked in Tennessee as an employee of Nationwide for decades. We identify no other factors that are relevant to this litigation. Under *Morgan*, there is no basis to overcome the presumption that Tennessee law applies to this dispute because that state has the most significant relationship to Walker's claims. Accordingly, for purposes of Ohio's borrowing statute, the claims accrued in Tennessee, and its statute of limitations must apply to Walker's claims. R.C. 2305.03(B).

{¶ 32} In conclusion, the trial court did not err when it concluded that Nationwide was entitled to summary judgment on Walker's claims. Under *Morgan*, Tennessee law applies to Walker's wrongful termination claims, which are consequently barred under that state's statute of limitations. Walker's sole assignment of error is overruled and the trial court's judgment is affirmed.

*Judgment affirmed.*

TYACK and SADLER, JJ., concur.

––––––––––––––––––