[Cite as *Gerace v. Biotheranostics, Inc.*, 2022-Ohio-302.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JAMES GERACE,                                  :

    Plaintiff-Appellant,            :

                                                   No. 110440

    v.                                          :

BIOTHERANOSTICS, INC., ET AL.,      :

    Defendants-Appellees.           :

_____

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 3, 2022

_____

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-939288

_____

### *Appearances:*

Polk Kabat, LLP, Shannon J. Polk, Mark F. Humenik, and
Daniel M. Connell, *for appellant.*

Jackson Lewis P.C., Vincent J. Tersigni, and Donald G.
Slezak, *for appellees.*

LISA B. FORBES, J.:

{¶ 1} Plaintiff James Gerace ("Gerace") appeals from the trial court's judgment dismissing his complaint against his former employer Biotheranostics, Inc., and three of the company's executives: Lisa Whitmyer, Vice President of

Marketing; Don Hardison, Chief Executive Officer; and Matt Sargent, Chief Commercial Officer (collectively "Defendants"). After reviewing the facts of the case and pertinent law, we affirm the lower court's judgment.

## I. Facts and Procedural History

{¶ 2} This case concerns, in part, whether California law can properly govern Gerace's claims in an Ohio state court. Gerace filed his complaint against the Defendants in the Cuyahoga County Common Pleas Court setting forth three claims: California unfair business/trade practices; wrongful discharge in violation of public policy under California law; and wrongful discharge in violation of Ohio public policy.[1] The gist of all three claims is that Defendants improperly terminated Gerace's employment.

{¶ 3} A brief summary of the parties and places is a logical place to start. Viewing the allegations in a light most favorable to the plaintiff, as we must when reviewing a lower court's ruling on a motion to dismiss, the following information is taken from Gerace's complaint. Gerace is a resident of Ohio, who lived and worked in Ohio at all times pertinent to this case. Biotheranostics is a Delaware corporation with a principal place of business in California and regularly conducts business in Ohio. Whitmyer is a resident of Ohio, Hardison is a resident of California, and Sargent is a resident of Arizona.

---

[1] Claims one and two are against Biotheranostics and Doe/XYZ Corporation Defendants. Claim three is against all Defendants.

{¶ 4} In January 2016, Biotheranostics hired Gerace to market its "most significant product, Breast Cancer Index ["BCI"], to hospitals and oncologists specializing in the treatment of breast cancer." The National Comprehensive Cancer Network ("NCCN") is a nonprofit organization "of 28 leading cancer centers devoted to patient care, research, and education." During the 5th Annual Cleveland Breast Cancer Summit, which was held in late August 2019, Dr. Jame Abraham ("Dr. Abraham"), who was the director of the Breast Cancer Oncology Program at the Cleveland Clinic, as well as an NCCN panelist, "spoke favorably about Biotheranostics's [BCI], giving the impression that the NCCN had approved, or would likely approve [BCI] for inclusion in its guidelines."

{¶ 5} During a break at the summit, Gerace thanked Dr. Abraham "for his positive comments about" BCI, and Dr. Abraham "became extremely upset, most likely as a result of a concern that he had violated NCCN's" policies by appearing to unofficially endorse BCI. Dr. Abraham communicated to the Defendants his disapproval of Gerace, ultimately stating that he was "done with Biotheranostics." On August 27, 2019, Biotheranostics terminated Gerace's employment. The next day, Dr. Abraham communicated to Defendants that he "could work with Biotheranostics after all."

{¶ 6} On March 22, 2021, the court granted Defendants' motion to dismiss, stating in part as follows:

> Count one of plaintiff's complaint, California unfair business/trade practices, pursuant to Cal. Bus. & Prof. Code § 17000 et seq. and count [two] wrongful discharge in violation of public policy under Cal. Penal

Code § 641.3 and Cal. Bus. & Prof. Code §17200 against Defendants * * * are dismissed as the operative facts alleged in the complaint occurred in Ohio, and therefore, Ohio law governs, and California's presumption against the extraterritorial application of state law preclude the claims.

Count three of plaintiff's complaint, wrongful discharge in violation of Ohio public policy * * * is dismissed as plaintiff failed to establish the clarity and jeopardy elements required to succeed on a wrongful discharge in violation of public policy claim.

{¶ 7} It is from this order that Gerace appeals.

## II. Law and Analysis

### A. Civ.R. 12(B)(6) Motion to Dismiss

{¶ 8} We review rulings on Civ.R. 12(B)(6) motions to dismiss under a de novo standard. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. * * * Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party." *NorthPoint Props. v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). "For a trial court to grant a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief.'" *Graham v. Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 47 (8th Dist.), quoting *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2011-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.).

{¶ 9} For ease of discussion, we address Gerace's assignments of error out of order.

**B.     California's Presumption Against the Extraterritorial Application of California Law Does Not Apply**

**{¶ 10}** In Gerace's second assignment of error, he argues that the "trial court erred * * * by determining * * * that California's presumption against the extraterritorial application of state law preclude[s] the claims." Upon review, we conclude that we need not look to California law because Ohio law governs the claims in the instant case.

**{¶ 11}** First, we note that appellate courts review a trial court's choice-of-law determination under a de novo standard. *Holliday v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 86069, 2006-Ohio-284, ¶ 14. The Ohio Supreme Court has held that "[w]hen confronted with a choice-of-law issue in a tort action * * * a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 342, 474 N.E.2d 286 (1984).

**{¶ 12}** More specifically, Ohio courts have held that in a wrongful termination case, the place where the plaintiff lost his or her employment is the place of the injury. *See Hoyt v. Nationwide Mut. Ins. Co.*, 10th Dist. Franklin No. 04AP-941, 2005-Ohio-6367, ¶ 27 (applying *Morgan* to a wrongful termination case and holding that New Jersey law applied when the plaintiff resided, worked, and was terminated in New Jersey); *see also Walker v. Nationwide Mut. Ins. Co.*, 10th Dist. Franklin No. 16AP-894, 2018-Ohio-1810, ¶ 20 ("Because a plaintiff's injury in a wrongful termination claim is the loss of employment, the place where the plaintiff lives and works is the place of injury.").

{¶ 13} Turning to the facts of the case at hand, Gerace lived and worked in the same state at the time his employment was terminated. This state is Ohio, and a presumption arises that Ohio law applies to his wrongful termination claims. For Gerace to overcome the presumption that Ohio law applies to his case, he must show that "another jurisdiction has a more significant relationship to the lawsuit." *Morgan* at 342. Courts take several factors, including the following, into consideration when determining whether a party made this showing:

> (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; * * *. All of these factors are to be evaluated according to their relative importance to the case.

*Id.*

{¶ 14} In the case at hand, the place of injury — i.e., Gerace's termination — is Ohio. The conduct that Gerace alleges caused his termination — i.e., Dr. Abraham's threats — took place in Ohio. Gerace also alleges that "[c]ritical decisions," such as "[t]he decision to terminate [him were] made in California by Biotheranostics executives * * *." Gerace lived and worked in Ohio. Biotheranostics is a Delaware corporation with a principal place of business in California and regularly conducts business in Ohio. Whitmyer is a resident of Ohio, Hardison is a resident of California, and Sargent is a resident of Arizona. According to Gerace's complaint, the Defendants "effectuat[ed] the termination of Plaintiff's Ohio-based employment," which tips the scales in favor of Ohio under the fourth factor.

**{¶ 15}** Upon review of Gerace's complaint, we conclude that Ohio has the most significant relationship to this lawsuit. Keeping in mind that Gerace's termination is the injury, the conduct leading up to the termination and the termination itself dominate this fact pattern. It is undisputed that these actions took place in Ohio. "[T]he state in which both the conduct and the injury occur has the dominant interest in regulating that conduct, determining whether is it tortious in character, and determining whether the interest is entitled to legal protection." *Kurent v. Farmers Ins. of Columbus*, 62 Ohio St.3d 242, 246, 581 N.E.2d 533 (1991). Gerace's second assignment of error is overruled.

## C. The Operative Facts Occurred in Ohio

**{¶ 16}** In his first assignment of error, Gerace argues that the trial court erred by dismissing his first two claims, specifically "by making impermissible factual findings that the operative facts alleged in the Complaint occurred in Ohio and not in California as specifically alleged by Plaintiff."

**{¶ 17}** In the first claim of Gerace's complaint, he alleges that Defendants violated two California code sections. First, Cal. Bus. & Prof. Code 17200, which states in pertinent part that "unfair competition shall mean and include any lawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Second, California Penal Code 641.3, which states that

> [a]ny employee who solicits, accepts, or agrees to accept money or any thing of value from a person other than his or her employer, other than in trust for the employer, corruptly and without the knowledge or consent of the employer, in return for using or agreeing to use his or her position for the benefit of that other person, and any person who

offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery.

{¶ 18} In the second claim of Gerace's complaint, he alleges that Defendants' termination of his employment "was unlawful, unfair, fraudulent, immoral, unethical, oppressive, and anti-competitive and frustrated the public policy of California, including, but not limited to, California's commercial bribery statute, Cal. Penal Code 641.3 and Cal. Bus. & Prof. Code 17200." In other words, Gerace's first and second claims allege the same facts and cite the same law.

{¶ 19} It is undisputed that the trial court found that "the operative facts alleged in the complaint occurred in Ohio * * *." Upon review of Gerace's complaint, we agree with the trial court. All of the facts in the complaint occurred in Ohio, with the exception of the following allegations: "Critical decisions resulting in Biotheranostics' 'plan' to bow to Dr. Abraham's demands and terminate Gerace were made in California." It is unclear from Gerace's complaint what those "critical decisions" were, although the only references to actions that took place in California concern communicating, via email or telephone, with people located in California. For example, Gerace alleges that "[i]t is believed than [an] email was shared with Biotheranostics' in-house General Counsel, Karla Kelly, in California, and other California-based members of Biotheranostics management team, including Defendant Hardison." Gerace also alleged that the "decision to terminate" was made in California.

{¶ 20} In his appellate brief, Gerace argues that the "trial court ultimately (but wrongly) accepted as true Defendants' characterizations of what allegedly happened, not Plaintiff's version of events." To clarify our standard of review, "we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party." Applying this test to the facts alleged in Gerace's complaint, we find that Gerace failed to plead "liability-creating conduct" that occurred in California, because, as explained above, "the place where the plaintiff lives and works is the place of the injury." *Walker*, 10th Dist. Franklin No. 16AP-894, 2018-Ohio-1810, at ¶ 20. This is the most significant factor in considering which state's law governs a wrongful termination claim. *Id.* We must not, and we did not, look to anything but Gerace's complaint to reach this conclusion.

{¶ 21} Upon review of Gerace's complaint, we cannot say that the trial court impermissibly found that the operative facts in the complaint occurred in Ohio. Accordingly, Gerace's first assignment of error is overruled.

### D.   Motion to Dismiss or Motion for Summary Judgment?

{¶ 22} In his third assignment of error, Gerace argues that the "trial court erred as a matter of law by relying on matters outside the pleadings and improperly converting a motion to dismiss into a motion for summary judgment * * *."

{¶ 23} Pursuant to Civ.R. 12(B), "[w]hen a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading

and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56."

**{¶ 24}** In the case at hand, Defendants attached the following exhibits to their motion to dismiss:  A) the complaint in *Gerace v. Cleveland Clinic Found.*, Cuyahoga C.P. No. CV-19-926516;[2] B) documents purporting to relate to Dr. Abraham's biographical information; C) documents purporting to relate to NCCN's guidelines; D) the complaint in *Gerace v. Biotheranostics*, Cal. S.C. No. 37-2019-00065891-CU-WT-CTL (Sept. 18, 2020);[3] and E) the court's journal granting the defendants' motion to dismiss in *Gerace*.

**{¶ 25}** We need not decide whether these exhibits were properly or improperly attached to the motion to dismiss.  As stated earlier in this opinion, a ruling on the motion to dismiss could be, and was, properly rendered by viewing the complaint alone.  Furthermore, there is nothing in the record to indicate that the trial court converted Defendants' motion to dismiss into a motion for summary judgment.

**{¶ 26}** Accordingly, Gerace's third assignment of error is overruled.

---

[2] Gerace filed a complaint in the Cuyahoga County Common Pleas Court against the Cleveland Clinic Foundation and Dr. Abraham based on the same allegations as in the case at hand.  This case is still pending as of the time this opinion was released.

[3] Gerace filed a complaint in a California trial court against the same defendants and alleging the same facts as in the case at hand.  This case was dismissed prior to the date the complaint in the instant case was filed.

### E.    Motion to Strike

{¶ 27} In his fourth assignment of error, Gerace argues that the "trial court committed prejudicial error by presumptively denying [his] motion to strike [attachments] to Defendants' * * * motion to dismiss * * *."

{¶ 28} Gerace filed a motion to strike the above-referenced attachments, and our review of the docket shows that the trial court did not rule on this motion. Ohio courts consistently hold that when a trial court fails to rule on a pending motion at the time of final judgment, appellate courts presume the motion was implicitly denied. *See, e.g.*, *Siemientowski v. State Farm Ins. Co.*, 8th Dist. Cuyahoga No. 85323, 2005-Ohio-4295, ¶ 39.

{¶ 29} Upon review, we cannot say that the implicit denial of Gerace's motion to strike Defendants' attachments was erroneous, because there is no evidence in the record that the trial court relied on these attachments in rendering its decision in this case. Therefore, Gerace's fourth assignment of error is overruled.

### F.    Wrongful Discharge in Violation of Ohio Public Policy

{¶ 30} In his fifth and final assignment of error, Gerace argues that the "trial court erred as a matter of law by dismissing [his claim] for wrongful discharge in violation of Ohio public policy."

> The common-law doctrine of employment at will generally governs employment relationships in Ohio. Under this doctrine, a general or indefinite hiring is terminable at the will of either the employee or the employer; thus, a discharge without cause does not give rise to an action for damages. * * * In response to perceived abuses of the at-will principle, a number of states created an exception that permitted a discharged employee to assert a tort cause of action for wrongful discharge in violation of a fundamental public policy. * * * [T]his court

followed the national trend in *Greeley* [*v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990)] and recognized a cause of action in tort for wrongful discharge in violation of public policy.

*Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, ¶ 5.

{¶ 31} In *Wiles* at ¶ 7-10, the Ohio Supreme Court listed the four elements of a claim for wrongful discharge in violation of Ohio public policy:

1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

{¶ 32} In the case at hand, the trial court found that Gerace "failed to establish the clarity and jeopardy elements" of the tort. We recognize that Gerace need not "establish" anything to successfully oppose a motion to dismiss. Nonetheless, we are able to review this assignment of error under the proper standard for reviewing the court's decision to grant a motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted; accepting all factual allegations of the complaint as true and drawing all reasonable inferences in favor of the nonmoving party, it appears from the face of the complaint that the plaintiff can prove no set of facts entitling him to relief.

{¶ 33} Additionally, the *Wiles* Court established "that the clarity and jeopardy elements were questions of law to be decided by the court while factual issues relating to the causation and overriding justification elements were generally for the trier of fact to resolve." *Wiles,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, at ¶ 11.

{¶ 34} Upon review, we find that Gerace has met the clarity element of the *Wiles* test; however, he failed to establish the jeopardy element, which posits that the facts at issue in a particular case would "jeopardize" the noted public policies.

{¶ 35} In Gerace's complaint, he refers to "well-recognized public policies in the State of Ohio, including * * * Ohio's common law prohibiting tortious interference with an employment relationship and Ohio's statute prohibiting deceptive trade practices." He further alleges that "[t]he actions of Defendants in terminating Gerace's employment [and] participating in, acquiescing to and/or failing to prevent [his] termination * * * jeopardized the aforementioned public policies." We note that this allegation is a legal conclusion. "[U]nsupported conclusions of a complaint are not considered admitted and are not sufficient to withstand a motion to dismiss." *State ex rel. Fain v. Summit Cty. Adult Prob. Dept.*, 71 Ohio St.3d 658, 659, 646 N.E.2d 1113 (1995).

### 1. Prohibiting Tortious Interference with an Employment Relationship as a Public Policy

{¶ 36} The elements of a tortious interference with an employment relationship are as follows: "(1) the existence of an employment relationship between plaintiff and the employer; (2) the defendant was aware of this relationship;

(3) the defendant intentionally interfered with this relationship; and (4) the plaintiff was injured as a proximate result of the defendant's acts." *Hester v. Case W. Res. Univ.*, 2017-Ohio-103, 80 N.E.3d 1186, ¶ 37 (8th Dist.).

{¶ 37} The tort of interfering with an employment relationship manifests a sufficiently clear public policy to satisfy the first element of a wrongful discharge in violation of public policy claim. *See Vitale v. Modern Tool & Die Co.*, 8th Dist. Cuyahoga No. 76247, 2000 Ohio App. LEXIS 2743 (June 22, 2000) ("Common law has established a public policy against tortious interference with contract * * *."). We find that this satisfies the clarity element of the *Wiles* test.

{¶ 38} However, we further find that the facts of the case at hand do not jeopardize Ohio's public policy against tortious interference with an employment relationship. This court has held that "the employer cannot be a defendant in this type of claim * * *." *Lennon v. Cuyahoga Cty. Juvenile Court*, 8th Dist. Cuyahoga No. 86651, 2006-Ohio-2587, ¶ 20.

> [T]here are three players in a tortious interference claim: the plaintiff, the defendant, and a third-party employer. In this instant case, however, appellant alleges that other employees interfered with her work, making the defendant in her case, her employer. This is not the type of situation that tortious interference with employment relationship is designed to protect.

*Id.* at ¶ 19.

{¶ 39} In following *Lennon*, we conclude that the facts alleged in the complaint filed in the case at hand do not jeopardize the public policy against tortious interference with employment relationships. Gerace sued his employer. He

did not sue Dr. Abraham or the Cleveland Clinic in this case. Gerace's employer and Defendants are one in the same. It is also notable that Ohio also has a clear public policy in favor of at-will employment. *See Greeley*, 49 Ohio St.3d at 234, 551 N.E.2d 981 (holding that the employment-at-will doctrine "permits termination of employment for no cause or for 'any cause' which is not unlawful, at any time and regardless of motive").

{¶ 40} Terminating Gerace under the circumstances in the case at hand did not jeopardize Ohio's public policy against tortious interference and cannot be the basis for wrongful termination in violation of Ohio public policy.

### 2. Prohibiting Deceptive Trade Practices as a Public Policy

{¶ 41} R.C. 4165.02 defines acts constituting deceptive trade practices and section (A)(10) states that it is a deceptive trade practice when a "person * * * in the course of the person's business, vocation, or occupation, * * * [d]isparages the good, services, or business of another by false representation of fact * * *." By enactment of this statute, the legislature expressed a public policy against deceptive trade practices. *See Greeley* at 234 ("[P]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute.").

{¶ 42} Gerace has alleged no acts or omissions in his complaint by any of the Defendants that could be seen as disparaging anything by false representation of fact. The factual allegations in the complaint center almost exclusively on Gerace and Dr. Abraham. Defendants' only act, as alleged in Gerace's complaint, was to

terminate Gerace's employment. There are simply no allegations that Defendants engaged in deceptive trade practices in violation of R.C. 4165.02(A)(1) or that Defendants violated the public policy against deceptive trade practices when they fired Gerace; therefore, Gerace's complaint fails to allege facts that jeopardize Ohio's public policy against deceptive trade practices.

{¶ 43} Accordingly, the court did not err by dismissing this claim against Defendants and Gerace's fifth and final assignment of error is overruled.

### G.    Conclusion

{¶ 44} The trial court did not err by dismissing Gerace's first two claims because they are based on California law and Ohio law controls the case at hand. Furthermore, the trial court did not err by dismissing Gerace's third claim because, looking at the allegations in a light most favorable to Gerace, he failed to allege circumstances under which Defendants jeopardized a clear Ohio public policy.

{¶ 45} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR